### ALLISTON v. WILLIAMS.

No. 10004.

Court of Civil Appeals of Texas. Galveston.

Nov. 2, 1934.

Rehearing Denied Dec. 6, 1934.

**804**

Carlos B. Masterson, of Angleton, and Perkins & Culbertson, of Fort Worth, for appellant.

Rucks & Enlow, of Angleton, for appellee.

PLEASANTS, Chief Justice.

The following is a sufficient statement of the nature and result of the suit:

The suit was brought by appellant in a district court of Tarrant county against appellee and Walter Graves, who is a resident of said county, to recover upon a check for $1,-672.56 drawn on April 24, 1932, by appellee, Williams, in favor of Walter Graves on Brazoria County State Bank, and thereafter, before presentation to the bank, transferred and indorsed by Graves to appellant. The petition alleges, in substance, that appellant acquired the check from Graves in due course of trade for value, without notice, and is an innocent holder thereof; that the check was duly presented for payment to the bank on April 26, 1932, and payment thereof was refused, whereupon plaintiff duly protested such nonpayment, and thereby incurred the expense of $2 protest fees.

A plea of privilege to be sued in the county of his residence was presented by Williams, and upon a hearing thereof plaintiff's cause of action against him was transferred to Brazoria county.

After the cause reached the district court of Brazoria county, appellee filed answer which contains a general demurrer and general denial, a special plea of failure of consideration, in that the cattle for which said check was given Graves were not delivered to appellee f. o. b. cars at Houston in good, sound, and healthful condition as required by the contract of sale executed by Graves and appellee.

"In this connection defendant alleges that on the 24th day of April, 1932, defendant contracted to purchase and the said Walter Graves contracted to sell to defendant one hundred and seventeen (117) head of steer cattle to be delivered in good, sound, healthful condition F. O. B. cars at Houston, Texas, and that the defendant agreed to pay for said cattle F. O. B. cars Houston, Texas, in said good, sound and healthful condition the sum of $1,672.56; that at the time said contract was made said cattle were then located in the pens of the Port City Packing Company at Houston, Texas, and that under the terms of the contract between the defendant and the said Graves the said Graves contracted and agreed to dip or have said cattle dipped in a proper arsenical solution and deliver said cattle to him F. O. B. said cars with a proper permit issued under authority of the Government permitting said cattle to be shipped from Houston to Angleton, Texas. This defendant alleges that following said agreement the said Graves did dip or have said cattle dipped in an arsenical solution and placed said cattle F. O. B. cars in Houston, Texas, and there delivered said cattle to the defendant, and the defendant, with the belief and understanding that said cattle had been properly dipped and had not been injured in dipping and that said cattle were in good, sound, healthful condition in said cars, delivered his said check for the sum of $1,672.56 to the said Graves in payment for said cattle in accordance with said contract. Defendant alleges that, contrary to said agreement, the said Walter Graves did not dip and did not have said cattle properly dipped in a proper arsenical solution before loading same upon said cars, as he had contracted so to do, but that said Walter Graves dipped said cattle or had said cattle dipped in an arsenical solution that was extremely dirty and contained too much arsenic and that said cattle were improperly dipped and improperly handled in and out of said vats and in loading them on said cars, and that as a result thereof said cattle when loaded on said cars and delivered to defendant F. O. B. said cars were sick, burned and poisoned and injured and were subject to become immediately sick, burned, poisoned and injured as a result of said dipping, as aforesaid, and that as a result of said injuries fifty (50) head of said cattle died shortly after reaching Angleton, Texas, and that the balance of said 117 cattle, namely, sixty-seven (67) head, were all badly burned, poisoned, and injured and thereby greatly damaged in the sum of $5.00 per head. This defendant alleges that had he known that said cattle had been improperly dipped and that they had been injured in the dipping and were injured as aforesaid when delivered to him F. O. B. cars, Houston, Texas, he would not have accepted said cattle. That he expended the further sum of $141.24 in freight and other proper and necessary expenses in shipping and handling said cattle that died, from Houston to Angleton. Defendant alleges that by reason of the said foregoing facts the said

check sued on herein was without consideration when same was delivered to the said Walter Graves, as aforesaid, and that the consideration for said check has failed in whole and in part."

This plea was sworn to by appellee.

The answer further specially denied that plaintiff acquired the check from Graves in due course of trade for value and without notice of any failure of consideration therefor, or that plaintiff is an innocent holder thereof, but avers that plaintiff had notice of such failure of consideration before he paid Graves for the check. .

"This defendant says that plaintiff is not in position herein to invoke the equitable powers of this court in the collection of said check, that at the time the said Graves endorsed said check to plaintiff, plaintiff did not pay to the said Graves a valuable consideration for said check, but that after plaintiff had. full notice that defendant had refused to pay the check sued on herein plaintiff paid a draft drawn by the said Walter Graves on plaintiff in favor of one Canada for a sum of approximately $1,500 or $1,600, the exact amount being unknown to this defendant but well known to plaintiff herein, it being the purchase price that the said Graves contracted to pay said Canada for the said cattle that he in turn sold to this defendant, as aforesaid. This defendant here now requests plaintiff to produce said draft upon the trial of this cause; that plaintiff paid said draft for the mutual benefit of himself and the said Walter Graves and for the purpose of aiding himself and the said Walter Graves in their effort to collect the amount of said check from this defendant under the guise of an innocent purchaser thereof, well knowing that the consideration for said check had failed and that said Walter Graves himself could not collect said check because the consideration thereof had failed, .and that said facts constitute a fraud upon this defendant."

This plea was also verified by the oath of appellee.

This answer further pleads:

"This defendant would further show to the Court that plaintiff and said Walter Graves, the payee in the check sued on herein, were at the time it is alleged that said check was endorsed by the said Graves to the plaintiff, partners and doing a partnership business in buying and. selling cattle, and were partners in the sale of said cattle to this defendant, and that plaintiff was to receive some of the profits of said transaction, and by reason of said partnership plaintiff is not .an innocent holder of said check sued on herein.

"Wherefore, premises considered, defendant prays that he go hence without day and recover his cost and he prays for such other and further relief, general and special, in law and in equity,. to which he may be entitled."

By supplemental petition the plaintiff presented 'a general demurrer and a number of special exceptions to the defendant's answer, the grounds of which need not be stated; and further denied generally all of the fact averments of the answer, and especially denies the averments of partnership of plaintiff and Walter Graves, and alleges "that the plaintiff never has been before or since the transaction involved in this suit a partner with Walter Graves." This answer was sworn to by plaintiff.

Upon the trial in the court below, after all of the evidence had been heard, the court refused the request of plaintiff to instruct the jury to return a verdict in his favor for the sum of $1,672.56, the full amount sued for by him, with 6 per cent. interest thereon from April 24, 1932, and instructed the jury, at the defendant's request, to return a verdict in favor of plaintiff for the sum of $759.56. The verdict was returned in·accordance with this instruction, and the court entered judgment thereon in plaintiff's favor in accordance with the verdict.

The evidence shows that plaintiff in April, 1932, and for several years prior thereto, had been engaged in the business of advancing money to cattlemen engaged in buying and selling cattle, under a contract or agreement by which he would pay the draft of the cattle buyer for cattle purchased by him for sale, and as compensation for the use of the money so furnished he would be entitled to 15 cents per head when the cattle so purchased were resold by the buyer. In the course of such business by plaintiff with cattle buyers, the cattle, for the purchase price of which the buyer had drawn on plaintiff in favor of the owner of the cattle, would sometimes be resold and the proceeds of such sale turned over to plaintiff before the draft drawn on plaintiff by the buyer could be presented to plaintiff for payment. The cattle involved in this suit were purchased by Graves from a man named Canada and paid for by a draft drawn by Graves on plaintiff. Before the draft was presented to plaintiff, Graves resold the cattle to appellee and received his check therefor for $1,672.56, drawn on the Brazoria

State Bank of Angleton. Graves sold and indorsed this check to plaintiff for a credit on a past-due debt of Graves to the plaintiff arising out of former similar transactions between them. Plaintiff had no knowledge or notice of any infirmity in the check when it was so negotiated to him and Graves' account credited therewith. He did not hear of appellee's claim of failure of consideration until the check was in course of transmission through the mail by plaintiff's bank at Fort Worth to Brazoria County State Bank. Before the check reached the Angleton bank, appellee discovered the loss and injury to the cattle caused by their improper dipping at Houston, and notified the Angleton bank to refuse payment of the check. A few days after the appellant had heard of appellee's claim of the loss and injury of the cattle, the draft drawn in favor of Canada was presented to appellant and paid by him.

By appropriate propositions based on sufficient assignments of error, appellant assails the judgment on the ground that the undisputed evidence required the court to instruct the jury to return a verdict in favor of plaintiff for the full amount of the check given by defendant to Graves and sold and indorsed by him to appellant.

These propositions must be sustained. There is ample evidence to sustain the finding that the cattle were not in sound condition when delivered to appellee by Graves f. o. b. cars at Houston, but that, because of improper dipping in the yards of Port City Packing Company at Houston, the agent of Graves in making such dipping and delivering the cattle on the cars at Houston, they were burned and poisoned, from the effects of which a number subsequently died and a number of others were so injured and damaged that their value was greatly reduced, and that the loss so sustained by appellee was, as between him and Graves, a failure of consideration for the check to the extent claimed by him. But there is no evidence that appellant had any knowledge or notice of these facts when he took the check from Graves and paid for it by giving Graves credit for its full amount on a bona fide indebtedness due him by Graves. There is no testimony tending to contradict appellant's statements, when testifying as a witness placed on the stand by appellee as to his transactions with Graves, of his entire want of notice of any infirmity in the check until after its indorsement and delivery to him by Graves, and the transaction completed by entry on his books of the amount of the check as a credit on his account against Graves and the forwarding of the check by mail to the Angleton bank.

The undisputed evidence shows that at the time the check was indorsed to appellant by Graves he was indebted to appellant in a sum exceeding $10,000. That a credit given Graves on this indebtedness for the amount of the check was a giving by appellant of value therefor is settled by the provisions of the Negotiable Instrument Act of this state, which provides that "value is any consideration sufficient to support a simple contract. An antecedent or pre-existing debt constitutes value; and is deemed such whether the instrument is payable on demand or at a future time." Article 5933, § 25, R. S. 1925; Adams v. Williams, 112 Tex. 469, 248 S. W. 673.

There was nothing on the face of the check that in any way impaired its negotiability under our Negotiable Instruments Act (Rev. St. 1925, art. 5932 et seq.), and, when such check was acquired by appellant for value and without notice of any infirmity therein, he was entitled to recover the full amount thereof against the drawer unless the check was obtained from the drawer by fraud, duress, or force and fear, or other unlawful means, or for an illegal consideration, or was negotiated in breach of faith or under such circumstances as amounted to a fraud. Rev. St. 1925, art. 5935, § 55.

There is neither pleading nor evidence to raise the issue of fraud in the obtaining of the check by Graves, or in its negotiation to appellant. Graves was not in Houston when the cattle were dipped by his agent, Port City Packing Company, and delivered to the appellee f. o. b. the cars as required by his contract of sale to appellee, and had no knowledge or notice of the grossly negligent manner in which the cattle were dipped or any claim by appellee for damages caused by such dipping until after he had negotiated the check to appellant, received credit therefor on his indebtedness to appellant, and the check had been forwarded by appellant's bank at Fort Worth to the drawee bank at Angleton.

It seems clear to us that upon this state of the pleadings and evidence the appellant was entitled to an instructed verdict as requested by him. Article 574, R. S. 1925; Lozano v. Meyers (Tex. Com. App.) 18 S.W.(2d) 588; Nicholas v. Oliver Farm Equipment Co. (Tex. Civ. App.) 37 S.W.(2d) 266; Title Guarantee Co. v. Pam, 232 N. Y. 441, 134 N. E. 525, 528; 6 Texas Jurisprudence, p. 993.

We do not think that the fact that appellant paid the Canada draft after he learned

of the infirmity in the check transferred to him by Graves in any way lessens appellee's liability on his check. Appellant had authorized Graves to draw the Canada check on him and could have no legal grounds for refusing to pay that draft.

The payment of the Canada draft was no part of the consideration for transfer to appellant by Graves of the check given him by appellee, and appellee can claim no protection under section 54 of article 5935, R. S. 1925.

These conclusions determine the disposition of this appeal and render it unnecessary for us to pass upon the remaining assignments and propositions presented by appellant.

The judgment of the trial court is reversed and judgment here rendered for appellant for the full amount of the check sued on, with interest and protest fees.

Reversed and rendered.