Mrs. Edward Wayne HILL, Individually and for LaDonya Hill, et al., Appellants,

v.

W. E. BRITTAIN, INC., et al., Appellees.

No. 16743.

Court of Civil Appeals of Texas.

Fort Worth.

June 24, 1966.

Rehearing Denied Sept. 9, 1966.

Ralph M. Hall, Rockwall, J. Alex Blakeley, Dallas, for appellants.

H. J. Loe, Fort Worth, Johnson, Guthrie, White, & Stanfield, and Curtis White, Dallas, for appellees.

OPINION

LANGDON, Justice.

This is an appeal from a judgment non obstante veredicto rendered in favor of appellees by which appellants seek to have the judgment set aside and the cause remanded for trial on the merits.

Mrs. Edward Wayne Hill, individually and on behalf of her minor daughter, LaDonya Hill sued G. W. Smith, Monty F. Renshaw, W. E. Brittain, Inc., and Gerald Harris for the death of Edward Wayne Hill, husband and father, which occurred June 26, 1962, on Highway 114 in Wise County, Texas, as the result of an accident involving a car and gravel truck. Hill was a passenger in the car, a Chevrolet, being driven by Don C. LaGrone. The car was headed west on Highway 114 at a point about 3 miles east of Boyd, Texas, when it collided with the gravel truck, owned by G. W. Smith, headed east and being driven by Monty F. Renshaw.

At the time of the collision a dump truck owned by W. E. Brittain, Inc., was being driven by Gerald Harris east on said highway, headed the same direction and ahead of the truck Renshaw was driving. The truck Harris was driving was not physically or otherwise involved in the collision of the two other vehicles. However, Brittian and Harris were joined in the suit on the theory that the truck Harris was driving had a defective motor which prevented Harris from driving faster and thus its presence on the highway was negligence and a proximate cause of Hill's death.

At the close of the plaintiffs' testimony and again at close of all testimony a motion for an instructed verdict was presented by the appellees. Each was overruled and appellees excepted.

Thereafter, the case against all four defendants was tried to a jury. The issues pertinent to this appeal were:

"8A: Do you * * * that Gerald Harris failed to keep a proper lookout, as that term is defined herein, for vehicles following him on the occasion * * * ?" The jury answered "yes."

8B—The usual proximate cause issue conditioned on a "yes" answer to 8A was answered "no."

"9A: Do you find * * * Gerald Harris operated * * * so as to wilfully obstruct and impede the normal reasonable and safe movement of traffic * * * ?" Followed by 9B—Negligence, 9C—Proximate Cause and 9D—Sole Cause, all of which were unanswered.

"10A: Do you find * * * Gerald Harris operated a heavily loaded truck on * * when the mechanical condition of the truck created a hazard for other traffic * * * ?" This issue was followed by Issues 10B, 10C, 10D identical with 9B, 9C and 9D respectively, none of which were answered.

11A—Inquired as to whether Harris was negligent in failing to drive upon his right hand shoulder of the roadway and was followed by Issues 11B—Proximate Cause, and 11C—Sole Cause, all of which were unanswered.

As above reflected only Issues 8A and 8B were answered. When the jury reported it was unable to answer all of the issues the court made an entry on his docket as follows: "6–12–65 Jury discharged and mistrial declared."

On August 2, 1965, Brittain and Harris filed their motion to sever as to them; to disregard certain findings of the jury; to ignore certain issues the jury failed to answer and to render judgment in their behalf. According to the fiat attached by the court the motion was set at 10:00 A.M. on September 3, 1965, and a counsel of record for appellees executed his certificate showing copy of motion mailed to opposing attorneys on August 3, 1965.

On December 21, 1965, after notice and hearing of the motion the trial court in sustaining it, severed as to Brittain and Harris, and disregarding the jury's answers to certain issues and its failure to answer others entered judgment that plaintiff, individually and for her minor daughter take nothing from the defendants, Harris and Brittain. A portion of the judgment pertinent to this appeal reads as follows: "On the 3rd day of September, 1965, came on to be considered, after reasonable notice thereof was given, said motion. * * * Counsel for Plaintiffs and movants appeared and presented to the Court their contentions in support of and in opposition to the motion. Thereupon, the Court, at the request of counsel for both Plaintiffs and said Defendants, extended the hearing on said motion in order that counsel might furnish the Court with written briefs which, in due time, were filed with the Court by said counsel. The Court, after considering said motion, argument (both oral and written) and said briefs, is of the opinion that said motion should be and the same is hereby in all things sustained."

Complaint is made of failure to serve appellants with a copy of said motion pursuant to Rule 301, Texas Rules of Civil Procedure, and of the action of the court in considering the motion because: (1) It was filed after the expiration of the term in which mistrial was declared and the court was without authority in a subsequent term to entertain the motion; (2) the discharge of the jury and declaration of mistrial restored the litigation to the same status as if no trial had occurred and thus extinguished any verdict a judgment non obstante veredicto could be based upon; (3) upon declaration of a mistrial nothing was pending in the court from the date thereof until the end of the term and the court therefore was without power to entertain the motion under Section (j), Rule 330, T.R.C.P. (4) Further, complaint is made of the court's action in holding as a matter of law that

there was no evidence of negligence on the part of Harris which concurred with that of Renshaw in proximately causing the collision between the car and truck; in disregarding the jury's answer to Issue No. 8 and in disregarding the jury's failure to answer other issues because there was pleading and evidence in support of the submission of and an affirmative finding as to each; that such action denied appellants the right of trial by jury; that since the jury reached no verdict and its findings were insufficient to support a judgment for either party the motion for judgment non obstante veredicto amounted to no more than a motion for summary judgment, and the judgment, a holding that plaintiffs' pleading was not sufficient as a matter of law to support the submission of the negligence and proximate cause issues.

We affirm.

The appellants are not denying that they were served with a copy of the motion and notice of the hearing. They complain because it was not by registered mail as provided by Rule 21a, T.R.C.P.

The above recitations from the judgment reflect that the trial court not only found that reasonable notice of the motion was given but that on the date set for the hearing, counsel for appellants and movants appeared and on joint request of counsel the court extended the hearing and permitted counsel to furnish written briefs before acting on the motion.

■ While it is true that the certificate of service does not specify whether notice was by registered, certified or regular mail we are of the opinion that the prima facie evidence of service plus the appearance and participation above reflected supports the court's conclusion that reasonable notice of the motion was given. See Rule 301, T.R.C.P. and Rules 21a, "Notice," and 21b, "Notice by Certified Mail." We are of the further opinion that the failure, if any, to comply with the rules of service and notice were waived by the appellants in

view of their full participation. Certainly the appellants were in no way prejudiced. There is no showing that they were denied any rights or privileges or that had service been proper, assuming it was not, that a different result would have obtained. There is nothing in this record to suggest that appellants could or would have made a better showing or presented a stronger case had they received notice by registered or certified mail rather than by regular mail.

■ The purpose of the rules relating to service and notice is to make reasonably certain that all parties to a suit are notified as to the date and time the court has set their matter down for hearing and determination. This is in order that the parties, individually or by counsel may appear, and present their side of the case and to take such action as is deemed appropriate to protect their interest. Thus, service and notice in a technical sense is incidental where the main purpose of obtaining the appearance of all parties and their participation is accomplished.

It is in instances where parties or the attorneys fail to make an appearance and participate in a hearing affecting their rights that an examination of the technical aspects of the rules of service and notice are and should be closely examined and adhered to.

In the case of Slay v. Burnett Trust, 143 Tex. 621, 187 S.W.2d 377 (1945), the jury failed to agree on any issue. It was discharged. Thereafter the court without notice rendered judgment for plaintiffs and immediately delivered copies thereof to the defendants. The Supreme Court held that the court was not governed by rules pertaining to judgments non obstante veredicto and that no notice of the entry of such judgment to the defendants was required. In its opinion the court stated, "The statutes and the rules contain no express authority for the procedure which was followed, but they contain no prohibition against it. The judgment rendered was the same judgment that would have been rendered had the court

sustained plaintiffs' motion for peremptory instruction before the case was submitted to the jury. A court is authorized to render judgment without submitting the case to the jury if the facts upon which the judgment is based are supported by undisputed evidence." (Cases cited.) "And it is held that the refusal of a court to grant a jury trial, or the rendition of judgment without a verdict from the jury when the case is tried by a jury, is not error, if the judgment is the only judgment that could properly have been rendered on the facts." (Cases cited.) In the Slay case motions for new trial were filed and argued before the trial court and the Supreme Court said that the record did not show that defendants were prejudiced by the procedure that was followed.

■ In the case at bar, the same judgment as entered could have been entered at the time the plaintiff closed and again when both sides closed before submission to the jury. The jury answered only two issues (8A and 8B) having any bearing on the case and all other issues were unanswered. Since it was unnecessary for the court to disregard any finding of the jury it could have entered the judgment it did upon its own motion, and without any notice as in the Slay case supra. The judgment entered is not inconsistent with the verdict. It is supported by it.

■ It has been frequently held that where the defendant is entitled to an instructed verdict which is overruled, and thereafter the case is submitted to a jury which fails to agree on a verdict, the Court is authorized to enter judgment for the defendant if the defendant's motion for an instructed verdict should have been sustained. Thompson v. Twin City Lumber & Shingle Co., 220 S.W.2d 539, p. 541 (Texarkana Civ. App., 1949, ref.); Handy v. Olney Oil & Refining Co., 68 S.W.2d 313 (Fort Worth Civ.App., 1933, ref.); and Slay v. Burnett Trust, 143 Tex. 621, 187 S.W.2d 377 (1945) supra.

■ The docket entry of mistrial was interlocutory. Firestone v. Hall, 143 S.W.2d 797 (Fort Worth Civ.App., 1940, no writ hist.); Fox v. Lewis, 344 S.W.2d 731, p. 734 (Austin Civ.App., 1961, ref. n. r. e.); and W. T. Rawleigh Co. v. Sims, 108 S.W.2d 332 (Amarillo Civ.App., 1937, no writ hist.). The trial court had the authority to set it aside during the same or a subsequent term provided the case had not been previously disposed of on its merits. Wichita Falls & S. R. Co. v. McDonald, 141 Tex. 555, 174 S.W.2d 951 (1943), citing Texas Land & Loan Co. v. Winter, 93 Tex. 560, 57 S.W. 39 (1900); and Kuehn v. Kuehn by the Tex.Com. of App., 242 S.W. 719 (1922).

It is said in Bachman Center Corporation v. Sale, 359 S.W.2d 290 (Dallas Civ.App., 1962, ref. n. r. e.) that "It is fundamental that a District Court has the inherent right to change or modify any interlocutory order or judgment down to the time when the judgment on the merits of the case becomes final. Rule 166–A, Texas Rules of Civil Procedure. Sneed v. Martin, Tex.Civ.App., 292 S.W.2d 891; Wichita Falls & S. R. Co., v. McDonald, 141 Tex. 555, 174 S.W.2d 951; Manley v. Razien, Tex.Civ.App., 172 S.W.2d 798; 25 Tex.Jur. 549, 550." See also Texas Land & Loan Co. v. Winter, 93 Tex. 560, 57 S.W. 39 (1900) and 33 Tex. Jur.2d 687, § 158, "Judgments", regarding the court's retention of plenary power over its judgments until they become final, including the authority to vacate a judgment or any interlocutory judgment and the authorities cited under this section.

■ In Kone v. Security Finance Co., 158 Tex. 445, 313 S.W.2d 281 (1958), it was said, "The trial court had continuing control of the interlocutory order with power to set it aside even at a subsequent term of court. Texas Land & Loan Co. v. Winter, 93 Tex. 560, 57 S.W. 39; 25 Tex.Jur. 549, Judgments § 153." Since the matter involved here is not an action upon either an original or an amended motion for new trial we believe the court, under Rule 330, Section (j), T.R.C.P., could of its own motion

set aside the entry or order of mistrial and enter judgment as was done in the case of Slay v. Burnett Trust, 143 Tex. 621, 187 S.W.2d 377 (1945). Since the court is authorized under Section (j) of Rule 330, supra, to proceed with a hearing of any case or other matter on trial at any subsequent term of court and there is no time limitation placed upon the filing of a motion for judgment non obstante veredicto, any authorities prior to January 1, 1961, the effective date of Rule 330, Section (j), supra, would not deprive the court of the new power conferred by said rule. See also Texas Crushed Stone Company v. Weeks, 390 S.W.2d 846 (Austin Civ.App., 1965, ref. n. r. e.).

Under the authorities we find no merit to the complaints of the appellants relating to service and notice or the authority of the court after term time to set aside its interlocutory order declaring a mistrial, or to enter the judgment it did.

■ The remaining points may be resolved by answering the single question: As a matter of law, was the evidence adduced by the appellants legally sufficient to prove negligence on the part of the appellees which was a proximate cause of the collision in which Hill died? Based upon our review of the record and the authorities bearing upon the facts contained therein we think the question should be answered "No" and that therefore the trial court did not err in disregarding the jury's answer to one issue and its failure to answer others and in entering judgment for the appellees.

■ "Under the rule providing that the court may render judgment non obstante veredicto if a directed verdict would have been proper, the term 'no evidence' does not mean literally no evidence at all but comprehends those situations wherein by the application of established principles of law the evidence is deemed legally insufficient to establish an asserted proposition of fact." Kirkpatrick v. Raggio, 319 S.W.2d 362 (Fort Worth Civ.App., 1958, ref. n. r. e).

■ Neither a jury verdict nor a judgment based upon it may rest on surmise, speculation or suspicion.

In Joske v. Irvine, 91 Tex. 574, 44 S.W. 1059, p. 1063 (1898): "* * * it is the duty of the court to instruct a verdict, though there be slight testimony, if its probative force be so weak that it only raises a mere surmise or suspicion of the existence of the fact sought to be established, such testimony, in legal contemplation, falling short of being 'any evidence' * * *."

See also Waco Drug Co. v. Hensley, 34 S.W.2d 832 (Tex.Com.App., 1931).

The evidence is summarized as follows: Highway 114 was a two-lane paved roadway. It had the usual and customary markings on it—a dividing stripe down the middle and no-passing marked lanes. It was a narrow, rough, hot top road running generally east and west. Officer Edward Donald Saunders, who investigated the accident, testified the width of Highway 114, where the collision occurred, for eastbound traffic was 10 feet 3 inches, and the entire width was 20 feet 3 inches. June 26, 1962, was a rainy day. At the time of the collision it was drizzling and the pavement was slick, slippery and wet.

Monty F. Renshaw was driving a diesel engine five axle rig, 1958 Mack Truck and trailer weighing 24,000 pounds empty. It was loaded with crushed rock, with a gross weight of 72,000 pounds. He was driving east out of Boyd on Highway 114. The truck and trailer belonged to G. W. Smith, for whom Renshaw was working. Coming out of Boyd headed east, there is a long sweeping curve to the right with a gradual rise to the top of a hill for a mile and a half or two miles. Renshaw saw a truck up ahead of him as he came up this grade. It was the Harris truck going in the same direction he was traveling—east on 114. At the time Renshaw first noticed the Harris truck it was about one-half mile ahead of him. When Renshaw reached the top of the hill beyond the crest of which the collision took place, he testified he was making

45 to 50 miles per hour. At that time Renshaw testified the Harris truck was some 2 to 3 hundred feet on down the road in front of him. Renshaw then pulled out to the left to see if any car was coming. A quarter of a mile way, he saw the Chevrolet in which Hill was riding (headed west) coming toward him going probably the speed limit— 60 miles per hour. After pulling out to the left side of the road to see around the truck, Renshaw then discovered it was so slick he could not get back on his side of the road without danger of jack-knifing his truck and trailer. Rather than lose complete control, he kept his truck and trailer straight on the left side of the road and met the Chevrolet head-on.

Gerald Harris, employee of W. E. Brittain, Inc., was driving a gasoline engine dump truck also loaded with crushed rock, the gross weight of which was 42,000 pounds. He had noticed the morning of the accident that the motor would not develop as much speed as it should, and this was particularly noticeable after he got his truck loaded at the rock pit that day. There were several towns having garages in them between the rock pit and the place of the accident where Harris could have stopped to have the motor of his truck repaired. On grades Harris had made, including the last one before the accident, his truck had slowed down to 5 miles per hour or less. When Harris topped the hill beyond which the collision occurred, his truck began to pick up speed so that by the time the collision took place he was traveling 15 to 25 miles per hour. Renshaw testified that he never caught up with the Harris truck and he was not trying to pass the Harris truck when he pulled out. The impact between Renshaw's truck and the Chevrolet in which Hill was riding occurred 10 to 15 feet back of the Harris truck. Harris, having come over the crest of the hill and picking up speed going down the opposite slope and traveling in his own lane of travel, did not have any knowledge that Renshaw was anywhere near when the collision occurred.

He was traveling anywhere from 15 to 25 miles per hour at the time of the impact. There was no minimum speed limit for the area. No portion of Harris' truck was in contact with either of the other vehicles. Harris did not know there was going to be an accident until he heard the crash back of him. Just before the collision, nothing had occurred that had attracted his attention to the rear, and at the time of impact back of him, he was looking straight ahead. No horns were sounded.

Officer Saunders, who investigated the accident, testified the point of impact was 447 feet east of the end of the no-passing zone line near the crest of the hill.

Only Renshaw, Harris and Saunders testified as to the physical details of the collision and the testimony above summarized appears to us to be without dispute. In considering the evidence from the standpoint most favorable to the appellants we are of the opinion it will not support the submission of issues of either negligence, proximate cause or affirmative findings as to such issues.

 It is undisputed that Renshaw did not blow his horn and that he was not trying to pass the Harris truck when he lost control of his truck. Further, it was undisputed that Harris did not know that the Renshaw truck was back of him until he heard the noise of the collision. At the time of the collision, Harris was not stopping, slowing down, or turning to left or right. He was on his own side of the road traveling about 15 to 25 miles per hour. Under such circumstances Harris had no duty to keep a lookout to the rear. Having no such duty and not knowing the Renshaw truck was anywhere near, he had no duty to pull out on the shoulder. At the time of the accident Harris was not doing anything from which he should have anticipated injury to others. Any mechanical defect was not related in any way to the accident. The fact Renshaw lost control of his truck two or three hundred feet back when he pulled out to look ahead was not due to any fault

of Harris, nor could the latter have anticipated such an occurrence from anything he had done or was doing at the time. Under the testimony Harris was gaining speed, not slowing down, at the time of the collision. Renshaw's claim that Harris seemed to be stopped is rebutted by his own testimony concerning the facts. Even if Harris was stopped Renshaw lost control of his truck three hundred feet back of Harris. It is not negligence to drive at a speed less than the maximum speed limit or to drive slowly on a road which has no minimum speed limit.

Even had Harris looked in his rear view mirror as he proceeded down his right lane of travel he would have been powerless to have prevented the accident. Renshaw had already lost control of his truck. Harris could not have anticipated the accident nor could he have taken any action which would have prevented it.

In Freeman v. Harkrider, 320 S.W.2d 238 (Amarillo Civ.App., 1959, no writ hist.), it was stated: "He hardly had more than one second to form an opinion of any kind or to apply his brakes in an attempt to avoid the collision. Bailey did not know whether appellee's Buick car was stopped or moving but he was willing to hazard a guess about the matter. His uncertain statements about whether or not the Buick automobile was moving or stopped and his refusal to give sworn testimony as to either does not constitute competent evidence. Such statements given in his testimony in fact are so weak as to give only a surmise or suspicion and therefore constitute nothing more than speculation or giving an impression or making a guess as to what the facts were and are not admissible as evidence as against credible testimony to the contrary. Houston Fire & Casualty Ins. Co. v. Biber, Tex. Civ.App., 146 S.W.2d 442.

"[3] * * * appellee did not have time to have done anything to have prevented the collision if he had known the Pontiac was approaching immediately before the collision but in any event appellee had the right to assume that the driver of the Pontiac approaching from his rear was observing the laws of the state. Holmes v. Cooley, Tex.Civ.App., 308 S.W. 2d 150.

"[4] Appellant claims that appellee was not keeping a proper lookout at the time and place of the collision but it has been held that a proper lookout is one that concerns vehicles in front of the motorist and not those approaching from the rear unless there appears to have been some particular fact that called the attention of the front motorist to the other motorist following him. Le Sage v. Smith, Tex.Civ.App., 145 S.W.2d 308. * * * no fact is revealed that would have called the attention of appellee to the appearance of the Pontiac following him. There is nothing to show or indicate that Bailey sounded his horn or gave any warning of his approach * *.

"[5] Appellant charges that appellee's slow rate of speed, if moving, was negligence such as proximately caused her injuries. No court of this state has held that a slow rate of speed of a motor vehicle driving upon a public road or highway constitutes negligence. Lewis v. Merrill, Tex. Civ.App., 295 S.W.2d 920. It has been held that the operation of a motor vehicle at a rate of 5 to 10 miles per hour while moving down a hill on the driver's right hand side of the highway when struck by another moving vehicle from the rear, as appellant alleged was being done in the case at bar, did not constitute negligence on the part of the front operator. Mueller v. Bobbitt, Tex.Civ.App., 41 S.W.2d 466.

" * * * Finally, in our opinion no genuine material issue of fact has been shown to exist as between appellant and appellee. * * *"

In the case of Solana v. Hill, 348 S.W.2d 481 (Eastland Civ.App., 1961, ref. n. r. e.), at page 485, it is stated: " * * * Hill did not attempt to stop, or slow down, while on the pavement. In the absence of evidence of some fact that should have attract-

ed Hill's attention to a situation that required a lookout to the rear, he had no duty to keep one. There was nothing in the nature of the situation shown that required Hill to watch cars to his rear. The fact that Hill was driving at less than the maximum speed permitted by law did not create a duty to keep a lookout to the rear. Since there was no duty, there was no negligence in failing to keep a lookout to the rear. Furthermore, we think Hill's failure to keep such a lookout was, clearly, not a proximate cause of the collision of Earl Weber's and Jordan's cars. Le Sage v. Smith, Tex.Civ. App., 145 S.W.2d 308, 312, (Writ Dis., C. J.); Freeman v. Harkrider, Tex.Civ.App., 320 S.W.2d 238; Valley Film Service v. Cruz, Tex.Civ.App., 173 S.W.2d 952, (Ref. W.M.), and Mueller v. Bobbitt, Tex.Civ. App., 41 S.W.2d 466. * * *"

In Le Sage v. Smith, 145 S.W.2d 308 (Fort Worth Civ.App., 1940, writ dis., correct judgment), it was stated: "We have said, in our opinion, that we know no rule of law that would require either Mr. Smith or Mrs. Smith to keep a proper lookout for vehicles approaching from the rear. * * * proper lookout * * * is one that concerns vehicles in front of the party to be held to such rule, and not those approaching from behind, unless there appears some particular fact that calls the attention of the driver of the front car to the car that follows, which would impose some duty upon the driver of the front car to maintain such a lookout, or unless the driver of such car either slows down his vehicle or intends to stop the same, under which circumstances, or either of them, it would be the driver's duty to keep a proper lookout for vehicles following such car and to then give a proper signal to apprise the driver of the car in the rear of such intention."

In Merchant's Fast Motor Lines, Inc. v. Lane, 259 F.2d 336 (5th Cir.) at page 339, it is said: "The driver of a lead vehicle may fail to keep a proper lookout and may fail to signal a left turn. But unless these omissions are related to the time when he is turning and a vehicle is overtaking him,

it cannot be said that they are acts of negligence as to a particular following vehicle." See also the case of Baumler v. Hazelwood, 339 S.W.2d 75 (Dallas Civ.App., 1960) and 162 Tex. 361, 347 S.W.2d 560 (1961), in which proximate cause is discussed, including the two distinct concepts, both of which must be present: (1) cause in fact,—a cause which produces an event and without which the event would not have occurred; and (2) forseeability.

We are unable to find any evidence of negligence on the part of Harris in his operation of the truck and having reached this conclusion there could have been no negligence on his part which concurred with that of Renshaw in proximately causing the collision between the car and the truck. Therefore, the cases cited by the appellant relating to concurrent negligence have no application to the facts of this case.

All points of error are overruled and the judgment of the trial court is in all things affirmed.