**ROBERTSON TANK LINES, INC.,**
**Appellant,**

v.

**Wallace C. STINSON et al., Appellees.**

No. 16104.

Court of Civil Appeals of Texas,
Houston (1st Dist.).

May 31, 1973.

Fulbright, Crooker & Jaworski, Royce R. Till, Russell H. McMains, Houston, for appellant.

Combs & Archer, Joseph F. Archer, Houston, for appellees.

Wyckoff, Eikenburg, Russell & Dunn, James Wyckoff, Houston, for intervenor.

COLEMAN, Chief Justice.

This is a rear end collision case. The trial court entered a judgment for the plaintiff after disregarding the answers made by the jury finding the plaintiff guilty of contributory negligence.

The occurrence from which this suit arose was a collision involving a tank truck driven by Tommy Lamar Baxley and owned by appellant, a pickup truck driven by Wallace C. Stinson, and a pickup truck driven by B. J. Norman, Jr. Stinson was traveling east on Hempstead Highway approaching the City of Houston, Texas, in the lane next to the center stripe on said highway. He testified that he observed traffic stopping in front of him and slowed to a stop behind the traffic. Norman was following Stinson and stopped his vehicle immediately behind the Stinson truck. Baxley was traveling in the same direction in the outside lane following a large cattle truck. He pulled into the inside lane at a speed of twenty to twenty-five miles per hour for the purpose of passing the cattle truck. As he was turning he saw the two trucks and immediately applied his brakes and attempted to swerve, but he was unable to avoid striking the Norman truck, which was propelled into the Stinson vehicle.

The jury found that Baxley was negligent on several counts. It also found that Stinson stopped his vehicle on the highway at a time when the same would not have been stopped by a person using ordinary care, and that such conduct was a proximate cause of the occurrence in question.

Baxley testified that he was stopped at a traffic light behind a tractor-trailer. It had a double deck and was loaded with cattle. There was traffic in the lane beside him. When the light changed the loaded cattle truck pulled out slowly. He followed it for just a short distance. His tank truck was empty. The traffic on his left cleared. He checked it by looking back and by looking in his mirror. It was a mile or a mile and a half to the next traffic light. He decided to pass the cattle truck. By deposition he testified that as he pulled out, and before he was clear, he saw two pickups, "that is all there was there." When asked whether he was absolutely sure "there was nothing else in front of those two pickups," he stated that he "wouldn't swear to it." He also testified that he didn't know whether there was anything in front of them or not. At the trial he testified that when he saw the pickups they were stopped. He didn't see a long line of traffic all the way down the highway. When he saw the stopped trucks, they were about the length of the courtroom away. He realized that he couldn't stop. He saw that the traffic lanes for oncoming traffic were clear, and turned sharply to the left. He hit the pickup with his right front fender, and stopped in the center lane for oncoming traffic.

The officer investigating the accident testified that Stinson told him at the scene of the accident that he stopped for traffic in front of him and was struck from the rear by the other pickup. Baxley told him that when he pulled into the center lane to pass "the other traffic was stopped and I hit them in the rear." Norman told him: "I was stopped for traffic in front of me and was hit from the rear by a large truck." The officer testified that there was a signal light "way further up" about two hundred yards. He also testified that the accident happened about 200 feet east of Bingle Road, and that, on reflection after studying photographs in evidence, it was about one quarter of a mile from the traffic light at Bingle Road to the next traffic light. From this testimony the jury might conclude that the pickup trucks were stopped some three hundred fifty yards from the traffic signal.

Stinson testified that "the traffic was pretty close to each other." "And I could see the traffic stopping way down over—in

front of me there, all the traffic started slowing down. So I went to slowing down with the traffic and just as we pulled up and I kind of done like—raised like I had the wheel like that, to see what was in front of me, what was causing that commotion on the freeway, like that, so much traffic. And I just like I'd raised up, I stopped probably 30–40 feet behind the other traffic and as I stopped we got hit from the back." He was almost positive he was stopped when he was hit, but the stopping and the collision happened within a few seconds. He testified positively that there were other cars stopped in front of him.

Mr. Otis, a fellow employee, was riding with Mr. Stinson at the time of the collision. He was not called as a witness. Mr. Norman did not testify. All of the testimony came from the participants in the accident. There was testimony that the driver of the tank truck was fired by the appellant, which the jury was instructed to disregard. He was not employed as a truck driver after the accident to the date of the trial, although he was employed in a different line of work.

Stinson's positive testimony that he stopped because the traffic in front of him stopped is supported by the statement he made to the officer at the scene, and also by the statements made to the officer by Norman and Baxley. Baxley testified that he could not see 250 feet ahead of him in the center lane of traffic as he followed the cattle truck. In view of his statement on deposition that he couldn't swear that there were no cars stopped in front of Stinson, his further testimony that he saw the two pickups does not amount to testimony that there was no traffic stopped in front of Stinson, and such an inference cannot be drawn from his testimony. Texas & N. O. R. Co. v. Compton, 135 Tex. 7, 136 S.W.2d 1113 (1940); Bush v. Hunter, 469 S.W.2d 655 (Tex.Civ.App.—Waco, 1971); Hill v. W. E. Brittain, Inc., 405 S. W.2d 803 (Ft.Worth 1966); Freeman v. Harkrider, 320 S.W.2d 238 (Tex.Civ.App. —Amarillo 1959). From his testimony at the trial that he saw the two pickups and did not see a long line of traffic all the way down the highway, the jury might infer that there was no traffic in front of Stinson which caused him to stop.

The stopping of a vehicle on the traveled portion of a busy highway constitutes evidence of negligent conduct. The jury refused to accept Stinson's explanation of his action. The members of the jury were not satisfied that such stopping was required by traffic conditions. There is no evidence of any other reason for Stinson's stop. The evidence required that the issue be submitted to the jury and the court erred in disregarding the answer. Enloe v. Barfield, 422 S.W.2d 905 (Tex. 1967).

The circumstance that Stinson was some 350 yards from the traffic light when he stopped, and the fact that there were business establishments which could have been reached by crossing the oncoming traffic lanes, will not support an inference that he stopped for the purpose of making a left turn. Such an inference would be based on pure speculation. Baxley testified that there was no traffic approaching when he turned to the left prior to the accident. Stinson testified that he was on his way back to the shop.

On deposition Baxley refused to testify positively that there were no other vehicles stopped in front of Stinson's truck. His testimony at the trial that he did not see a long line of traffic must be considered in light of the fact that his opportunity for observation was limited and brief. The instant he saw the two trucks he realized that an accident was probable. Stinson's testimony was positive and was supported to some extent by other evidence.

Appellee, by cross-point, contends that the jury finding of negligence on his part is so contrary to the great weight of the evidence as to be clearly wrong. In determining this point we are required to consider all of the evidence, rather than mere-

ly the evidence, and inferences therefrom, favorable to the verdict. This cross-point is sustained.

The judgment is reversed and remanded.