Opinion issued December 19, 2008
 





    





In The
Court of Appeals
For The
First District of Texas
____________

NO. 01-07-00199-CV
____________

RAYMON POLAND, INDIVIDUALLY AND AS INDEPENDENT
ADMINISTRATOR OF THE ESTATE OF JESSIE POLAND, ROBERT
MARTIN, AND FRANK MARTIN, Appellants

V.

DAVID OTT, Appellee




On Appeal from 152nd District Court
Harris County, Texas
Trial Court Cause No. 2006-38894(c)



 
OPINION DISSENTING FROM THE DENIAL OF
EN BANC CONSIDERATION In its opinion, the panel erroneously concludes that appellants, Raymon Poland,
Individually and as Independent Administrator of the Estate of Jessie Poland, Robert
Martin, and Frank Martin (“the Polands”), untimely served their medical liability
expert report on appellee, Dr. David Ott, MD. See Act of June 2, 2003, 78th Leg.,
R.S., ch. 204, § 10.01, 2003 Tex. Gen. Laws 847, 875 [hereinafter “former section
74.351(a)”] (amended 2005) (current version at Tex. Civ. Prac. & Rem. Code Ann.
§ 74.351(a) (Vernon Supp. 2008)). 
          In fact, the Polands, on July 29, 2005, had, upon request, mailed their expert’s
report to Gary McLeod of APMC Insurance Services (“APMC”), Dr. Ott’s insurance
carrier. It is undisputed that the Polands’ attorneys served the expert report on
APMC, and Dr. Ott in no way denies the fact that McLeod actually received the
report. 
          Regardless, the panel reasons that because the Polands did not, after filing their
health care liability claims in court, serve another copy of the expert report directly
on Dr. Ott or his attorneys, the Polands’ claims for the wrongful death of Mrs. Poland
must be dismissed with prejudice and the Polands must pay the attorneys’ fees of Dr.
Ott. See Tex. Civ. Prac. & Rem. Code Ann. § 74.351(b). In doing so, the panel
misinterprets the plain language of former section 74.351(a), disregards the
legislative purposes of the statute, misunderstands the fundamental purpose of rule
21a, and misapplies the rule, resulting in a serious error, requiring en banc
consideration of the case. See Tex. R. App. P. 41.2(c). 
Factual and Procedural Background 
          The pertinent facts of the case are straightforward and undisputed. St. Luke’s
Episcopal Hospital (“St. Luke’s”), on August 11, 2003, admitted Mrs. Poland for
elective mitral valve


 replacement surgery. Although Mrs. Poland had been taking
Coumadin for mitral valve regurgitation, she stopped taking Coumadin on August 9,
2003 in preparation for the surgery. Dr. Ott, the attending cardiac surgeon, 
performed the surgery on August 12, 2003. Due to bleeding complications that
occurred during the surgery, Mrs. Poland was twice taken back into surgery, and she
died as a result of the complications on August 20, 2003. 
          Thereafter, the Polands’ attorneys complied with the notice provision of
chapter 74 of the Texas Civil Practice and Remedies Code.


 Having received the
Polands’ notice (presumably from Dr. Ott), McLeod, on July 13, 2005, wrote a letter
to the Polands’ attorney informing them that their notice had been referred to APMC
“for response, as we are [Dr. Ott’s] professional liability carrier. We will be
investigating this case on behalf of Dr. Ott.” McLeod also requested the Polands’
“medical expert’s specific criticisms of our member’s care so that we might share
those concerns with David Alan Ott, M.D.” Fulfilling McLeod’s request, the
Polands’ attorneys, on July 29, 2005, mailed him “the information you requested
regarding the opinion of our expert witness,” enclosing their expert report, written by
Dr. Dennis Moritz, M.D., a Board Certified Cardiac Surgeon. (Emphasis Added).
Attached to Dr. Moritz’s report was his lengthy curriculum vitae.  
          In sum, Dr. Moritz, in his expert report, stated that the pertinent standard of
care in regard to surgery on a patient on Coumadin “is to stop the Coumadin and
allow the coagulation profile to return to normal.” He also stated, “Performing any
elective surgery on a fully anticoagulated patient is a breach of the standard of care. 
This is particularly true for operations such as heart surgery in which bleeding is
always a potential hazard.” Dr. Moritz noted that it “is essential to check the
[Prothrombin Time (“PT”) and International Normalized Ratio (“INR”)] before
surgery and defer surgery until it returns to near normal,” and that Mrs. Poland’s
PT/INR “was not only elevated, but was well above the therapeutic range at the time
of admission.” He emphasized that “[t]he dangerous [PT/INR] level was confirmed
. . . , but the operation proceeded nonetheless. The attending surgeon, Dr. Ott, as well
as the Anesthesiologists involved should have seen these levels on INR and
immediately cancelled the case.” Dr. Moritz concluded,
It is my opinion based on a reasonable degree of medical probability that
proceeding with this operation in a patient who was fully anticoagulated
with Coumadin led to bleeding, multiple transfusions of blood products,
multiple organ failure, and finally death.
 
The principle of not doing elective surgery on a fully anticoagulated
patient is so basic to surgical principles, that I feel this breach of the
standard of care must also reflect a serious system failure at this
hospital. Many people had knowledge, or should have had knowledge
of Mrs. Poland’s PT/INR. Any of these could have and should have
initiated action to cancel the case. This failure resulted in Mrs. Poland’s
death. 
          On October 24, 2005, the Polands filed their original petition, alleging, as
noted by the panel, 
          that, at the time of surgery, [Mrs.] Poland’s blood contained a
level of Coumadin that the health-care providers should have known
rendered her blood fully anti-coagulated and, thus, rendered surgery
dangerous. The surgery was nonetheless performed; Mrs. Poland bled
internally; and she died several days later of multi-system organ failure. 

Poland v. Ott, No. 01-07-00199-CV, 2008 WL _______, at *__ (Tex. App.—Houston
[1st Dist.] Dec. 19, 2008, no pet. h.).
          Subsequently, Dr. Ott moved to dismiss the Polands’ health care liability
claims on the ground that the Polands had failed to timely serve him or his attorneys
with Dr. Moritz’s expert report. See Act of June 2, 2003, 78th Leg., R.S., ch. 204,
§ 10.01, 2003 Tex. Gen. Laws 847, 875 (amended 2005); Tex. Civ. Prac. & Rem.
Code Ann. § 74.351(b). Concluding that the Polands untimely served Dr. Ott with
Dr. Moritz’s expert report, the trial court entered its October 30, 2006 interlocutory
order granting Dr. Ott’s motion to dismiss the Polands’ health care liability claims
against him. 
Section 74.351(a)
          In their sole issue concerning Dr. Ott, the Polands argue that the trial court
erred in dismissing their health care liability claims against Dr. Ott on the ground that
they did not comply with former section 74.351(a) because they, in fact, timely
“served [their expert’s] report on Dr. Ott’s designated representative and duly
authorized agent, his insurance carrier, who initiated contact with [the Polands’]
counsel and requested the report be sent to him so that he could share those concerns
with Dr. David Ott.” The Polands assert that they “satisfied the spirit of [former]
section 74.351(a) by serving the report on Dr. Ott’s designated representative instead
of serving it upon Dr. Ott’s attorneys because Dr. Ott’s designated representative and
duly authorized agent requested that the report be served upon the insurance carrier.” 
          In fact, the trial court, during the hearing on Dr. Ott’s motion to dismiss, asked
all of the defendants present, “[W]ho got the report beforehand?” Counsel for Dr. Ott
answered:
Dr. Ott received it through—he was served with it through his carrier,
presuit notification. 

(Emphasis added.)

          Dr. Ott argues that the trial court did not err in dismissing the Polands’ health
care liability claims because the Polands “did not satisfy the requirements of [section]
74.351 by mailing Dr. Ott’s insurance carrier an unsigned expert report prior to filing
their health care liability claim.” Dr. Ott does not claim that he and his attorneys did
not actually receive the report. Rather, he emphasizes that section 74.351 “provides
that the expert report must be served upon the party or the party’s attorney. It does
not indicate that the report may be mailed to the party’s insurance carrier or any agent
of the party.” Thus, Dr. Ott asserts that neither “service” on his “insurance adjuster”
nor “pre-suit service” can “satisfy” the requirements of section 74.351. 
          The panel, without determining whether the Polands’ service of their expert
report on McLeod at APMC was effective, holds:
[P]rovision of an expert report before a health-care-liability claim is
filed in court against the physician or health-care provider does not meet
former section 74.351(a)’s service requirements.

Poland, No. 01-07-00199-CV, 2008 WL _______, at *__. The panel reasons:
The plain language of former section 74.351(a) and [Texas Rule of Civil
Procedure] 21a, which it implicitly incorporates by use of the term
“serve,” simply does not contemplate “service” of the expert’s report
and [curriculum vitae] on a physician or health-care provider until after
a claim has been filed in court against that person or entity. 
 
See id. The panel’s erroneous holding and reasoning is based on another panel’s
holding in University of Texas Health Science Center at Houston v. Gutierrez, 237
S.W.3d 869, 873 (Tex. App.—Houston [1st Dist.] 2007, pet. denied). In Gutierrez,
this Court held that:
Given the express legislative intent of Chapter 74 and the intentional
legislative act of replacing the word “furnish” with “serve” in section
74.351(a), we determine that proper service under rule 21a must occur
to effectuate the intent of Chapter 74 as a whole, and section 74.351(a)
specifically.[


] 

Id. (emphasis added). The panel concedes:
We reach this conclusion despite the fact that, as the [Polands] note, the
section requires service “not later than” 120 days after a claim is filed,
rather than requiring service within 120 days after the claim is filed.

Poland, No. 01-07-00199-CV, 2008 WL _______, at *__ (emphasis added). 
          Although Dr. Ott and the panel state that the “plain language” of former section
74.351(a) actually requires that a medical liability expert report be served only after
the filing of a lawsuit asserting a health care liability claim, nothing in the plain
language of the statute so states. Former section 74.351(a) provides: 
In a health care liability claim, a claimant shall, not later than the 120th
day after the date the claim was filed, serve on each party or the party’s
attorney one or more expert reports, with a curriculum vitae of each
expert listed in the report for each physician or health care provider
against whom a liability claim is asserted. The date for serving the
report may be extended by written agreement of the affected parties. 

See Act of June 2, 2003, 78th Leg., R.S., ch. 204, § 10.01, 2003 Tex. Gen. Laws 847,
875 (amended 2005) (emphasis added). Thus, as conceded by the panel, former
section 74.351(a) actually requires service “‘not later than’ 120 days after a claim is
filed,” not “within 120 days after the claim is filed.” (Emphasis added.) 
          The Texas Supreme Court has explained, 
When interpreting statutes, we try to give effect to legislative intent. 
“Legislative intent remains the polestar of statutory construction.”
However, it is a cardinal law in Texas that a court construes a statute,
“first by looking to the plain and common meaning of the statute’s
words.” If the meaning of the statutory language is unambiguous, we
adopt, with few exceptions, the interpretation supported by the plain
meaning of the provision’s words and terms. Further, if a statute is
unambiguous, rules of construction or other extrinsic aids cannot be
used to create an ambiguity. 
Fitzgerald v. Advanced Spine Fixation, Sys., Inc., 996 S.W.2d 864, 865–66 (Tex.
1999) (citations omitted).  
          Here, the panel turns to Texas Rule of Civil Procedure 21a and creates such an
ambiguity. See Tex. R. Civ. P. 21a. Rather than focus on the plain and common
meaning of the word “serve,” the panel reasons that former section 74.351(a)
“implicitly incorporates” rule 21a, which does not, in the words of the panel,
“contemplate ‘service’” of any pleading, plea, motion, or other form of request
required to be served under rule 21 until after a claim has been filed in a court. The
panel also notes that each defendant whose conduct is implicated in an expert’s report
“must file and serve any objection to the sufficiency of the report not later than the
21st day after the date it was served, failing which all objections are waived.” Act of
June 2, 2003, 78th Leg., R.S., ch. 204, § 10.01, 2003 Tex. Gen. Laws 847, 875
(amended 2005). Thus, the panel concludes that delivery of an expert report to a
defendant physician or health care provider “before a health-care-liability claim is
filed in court against the physician or health-care provider does not meet former
section 74.351(a)’s service requirements.” Poland, No. 01-07-00199-CV, 2008 WL
_______, at *__ .  
          The word “serve,” as a verb, is defined simply as to “make legal delivery of (a
notice or process)” and to “present (a person) with a notice or process as required by
law.” Black’s Law Dictionary 1372 (7th ed. 1999). Thus, all that former section
74.351(a) requires is that a health care liability claimant “deliver” or “present” each
party or their attorney with an expert report and curriculum vitae of each expert listed
in the report for each physician or health care provider against whom a liability claim
is asserted by the hard-and-fast deadline. See Act of June 2, 2003, 78th Leg., R.S.,
ch. 204, § 10.01, 2003 Tex. Gen. Laws 847, 875 (amended 2005). Only if a
defendant physician or health care provider “has not been served” with an expert
report by the deadline, “shall” a trial court then order the claim dismissed with
prejudice and award attorney’s fees and costs to the pertinent defendants. See Tex.
Civ. Prac. & Rem. Code Ann. § 74.351(b). 
          Rule 21a does not define the word “serve,” which, as noted above, simply
means to “deliver”; rather, it provides:
Every notice required by these rules, and every pleading, plea, motion
or other form of request required to be served under Rule 21, other than
the citation to be served by the filing of a cause of action and except as
otherwise expressly provided in these rules, may be served by delivering
a copy to the party to be served, or the party’s duly authorized agent or
attorney of record, as the case may be, either [1] in person or by agent
or by courier receipted delivery or [2] by certified or registered mail, to
the party’s last known address, or [3] by telephonic document transfer
to the recipient’s current telecopier number, or [4] by such other manner
as the court in its discretion may direct.

Tex. R. Civ. P. 21a (emphasis added). The plain purpose of rule 21a is to ensure that 
parties receive, by delivery, “notice” and “every pleading, plea, motion or other form
of request required to be served under Rule 21.” Id. It clearly gives trial courts
discretion to direct other methods of delivery. Id. More importantly, as explained by
the Fort Worth Court of Appeals:
The purpose of the rules relating to service and notice is to make
reasonably certain that all parties to a suit are notified as to the date and
time the court has set their matter down for hearing and determination. 
This is in order that the parties, individually or by counsel may appear,
and present their side of the case and to take such action as is deemed
appropriate to protect their interest. Thus, service and notice in a
technical sense is incidental where the main purpose of obtaining the
appearance of all parties and their participation is accomplished. 

Hill v. W. E. Brittain, Inc., 405 S.W.2d 803, 807 (Tex. App.—Fort Worth 1966, no
writ) (emphasis added). 
          In Hill, although the Hills did not deny that they were actually “served with”
a copy of a motion for judgment not withstanding the verdict and notice of a hearing
on the motion, they complained because it was not sent to them “by registered mail
as provided by Rule 21a.” Id. The court concluded that “prima facie evidence of
service” and the appearance and participation of the Hills at the hearing demonstrated
that the Brittain’s notice by mail was adequate. Id. The court explained that the Hills
“were in no way prejudiced.” Id. Moreover, the Hills made “no showing that they
were denied any rights or privileges or that had service been proper, assuming it was
not, that a different result would have obtained.” Id. In sum, nothing suggested that
the Hills “could or would have made a better showing or presented a stronger case
had they received notice by registered or certified mail rather than by regular mail.” 
Id.
          Here, likewise, although Dr. Ott complains that neither he nor his attorneys
received the Polands’ expert report directly from the Polands after they had filed their
lawsuit, the Polands’ service of the expert report upon Dr. Ott’s insurance carrier
prior to the filing of their lawsuit, as requested by McLeod, was adequate. Dr. Ott
makes no showing of any prejudice. In fact, APMC is presumably fulfilling its duty
to defend him.
          Relying on rule 21a to fault the Polands for not serving yet another copy of
their expert report on Dr. Ott after filing suit not only results in a miscarriage of
justice, but actually goes against the very purpose of our rules of civil procedure upon
which the panel relies to reach its holding. We are to “liberally” construe the rules
because “[t]he proper objective of rules of civil procedure is to obtain a just, fair,
equitable and impartial adjudication of the rights of litigants under established rules
of substantive law.” Tex. R. Civ. P. 1. The general commentary to rule 1 expressly
warns:
Any procedural device or rule therefore, which impedes the
investigation or the evaluation of the facts or the awarding of the just
consequences thereon, is incompatible with an ideal procedure. No
mere rule of procedural form or courtesy should be allowed to delay or
control the disposition of the litigation upon its merits.
 
No judgment should ever be rendered in the trial court which is based
upon mere procedural technicalities . . . . There is no vested right in
rules of procedure; much less is there any vested right in procedural
errors.

Tex. R. Civ. P. 1-General Commentary-1966 (Vernon 2003). This is especially true
when a litigant like Dr. Ott has not shown any prejudice due to receiving the expert
report pre-suit.       
          Nothing in former section 74.351(a) precludes a claimant from serving an
implicated physician or health care provider with her expert report and curriculum
vitae along with an original petition or prior to the actual filing of such a claim in
court in an effort to reach a settlement. When a claimant does serve her expert report
on an implicated physician or health care provider along with the filing of her health
care liability claims prior to filing those claims in court, then a defendant certainly
can object to the report not later than 21 days after being served with the petition. 
Here, regardless, the plain language of former section 74.351(a) simply does not
render untimely the Polands’ delivery of their expert’s report on APMC upon its
request. It certainly does not evidence a legislative intent that a claimant’s failure to
serve yet another copy of the same expert report after the filing of a claim requires
that the trial court dismiss the claim. 
          The purpose behind the Legislature’s requirement of “early expert reports” is
not to create a “gotcha”; it is to “stem frivolous suits against health care providers.” 
Lewis v. Funderburk, 253 S.W.3d 204, 205 (Tex. 2008). As recently noted by our
sister court, in enacting Chapter 74, the Legislature sought to “‘(1) reduce excessive
frequency and severity of health care liability claims through reasonable
improvements and modifications in Texas insurance, tort, and medical practice
systems;’ and ‘(2) decrease the cost of those claims and ensure that awards are
rationally related to actual damages.’” Mokkala v. Mead, 178 S.W.3d 66, 74 (Tex.
App.—Houston [14th Dist.] 2005, no pet.) (quoting Act of June 2, 2003, 78th Leg.,
R.S. ch. 204, § 10.11(b), 2003 Tex. Gen. Laws 847, 884). In presenting House Bill
4, which included the pertinent language in section 74.351, Representative Joe Nixon,
Chair of the House Committee on Civil Practices, explained, 
House Bill 4 . . . is designed to promote fairness and efficiency in civil
lawsuits, protect Texas citizens and Texas courts from abusive litigation
tactics, remove incentives in the system that are causing unwarranted
delay and expense. House Bill 4—its purpose is to restore the needed
balance in our court system so that it can operate more efficiently and
more fairly and less costly. 

Id. (citing Hearings on Tex. H.B. 4 Before the House Comm. on Civil Practices, 78th
Leg., R.S. 1 (Feb. 26, 2003) (statement of Rep. Nixon) (transcript available from
Capitol Research Services, Austin, Texas)) (emphasis added). Representative Nixon
emphasized that “the hard reality is we just need to make a hard and fast deadline,
like we do on statue [sic] of limitations—as we do on other requirements.” Id. (citing
Debate on Tex. H.B. 4 on the Floor of the House, 78th Leg., R.S. 317 (March 19,
2003) (statement of Rep. Nixon) (transcript available from Capitol Research Services,
Austin, Texas)) (emphasis added)).
          Here, not only did the Polands meet former section 74.351(a)’s deadline, they,
by providing, upon the direct request of McLeod, APMC with the expert report of Dr.
Moritz prior to filing their health care liability claims, essentially placed all of their
cards on the table to effectuate an early settlement of the case. As noted by the trial
court when addressing the Polands’ attorneys at the hearing on the motion to dismiss:
What I will do is I will issue an order one way or the other. . . . Because
this issue needs to be decided. Because lawyers usually don’t do what
you have done. And I feel like plaintiffs were attempting to do what the
statute attempts to require of them. And usually the case is plaintiffs are
trying to do the least, and defendants file a motion to dismiss in that
situation. 

(Emphasis added.) 
          Dismissing the Polands’ claims with prejudice and making them pay the
attorney’s fees of Dr. Ott under these circumstances constitutes a misapplication of
former section 74.351(a). In doing so, the panel misinterprets the plain language of
the statute and goes against its purpose to stem frivolous lawsuits against health care
providers while promoting fairness and efficiency in such lawsuits.
          Certainly, a health care liability claimant’s certification of compliance with rule
21a in delivering an expert report to a defendant doctor or health care provider would
entitle the claimant to “a presumption of delivery” of the report. However, the bottom
line is that the claimant need not rely on such “a presumption of delivery” after the
defendant’s attorney acknowledges that the defendant “was served with it.”


 
Accordingly, this panel’s statement in the instant case that former section 74.351(a)
implicitly incorporates the requirements of rule 21a and the panel’s statement in
Gutierrez that “proper service under rule 21a must occur to effectuate the intent of
Chapter 74 as a whole, and section 74.351 specifically” are in serious error. See
Poland, No. 01-07-00199-CV, 2008 WL _______, at *__ ; Gutierrez, 237 S.W.3d at
873. 
 
 
 
 
 
 
 
 
 
 
 
Conclusion
          In sum, the En Banc Court should hold that the Polands timely served Dr. Ott
with the health care liability expert report of Dr. Moritz, sustain their sole issue, and
remand the case to the trial court for further proceedings. Moreover, the En Banc
Court should overrule this Court’s holding in Gutierrez that “proper service under
rule 21a must occur to effectuate the intent of Chapter 74 as a whole, and section
74.351 specifically.” Gutierrez, 237 S.W.3d at 873. Accordingly, I respectfully
dissent from the denial of en banc consideration of the case.  
          
 
                                                                        Terry Jennings
Justice

Panel consists of Justices Taft, Keyes, and Alcala.

Appellants moved for rehearing to the panel and for en banc reconsideration to the
Court. See Tex. R. App. P. 49.1, 49.7.

The panel denied the motion for rehearing addressed to it, leaving pending the motion
for en banc reconsideration, which maintained the Court’s plenary power over the
case. See Tex. R. App. P. 19.1, 49.3.

During the pendency of the motion for en banc reconsideration, the Court sua sponte
withdrew its opinion and judgment issued January 31, 2008, thus rendering moot the
motion for en banc reconsideration. Cf. Brookshire Brothers, Inc. v. Smith, 176
S.W.3d 30, 41 n.4 (Tex. App.—Houston [1st Dist.] 2004, pet. denied) (op. on reh’g).

After the Court’s withdrawal of its January 31, 2008 opinion and judgment, during
the pendency of the Court’s plenary power over the case, and before another opinion
and judgment had issued in the case, en banc consideration was requested from within
the Court. See Tex. R. App. P. 41.2(c).

Chief Justice Radack and Justices Taft, Nuchia, Jennings, Keyes, Alcala, Hanks,
Higley, and Bland, participated in the vote to determine en banc consideration.

A majority of the Justices of the Court voted to deny en banc consideration. See id.

Justice Taft, concurring in the denial of en banc consideration. See Tex. R. App. P.
47.5.

Justice Jennings, joined by Justice Bland, dissenting from the denial of en banc
consideration. See id.