# SAM L. KONE V. SECURITY FINANCE COMPANY

No. A-6628. Decided May 21, 1958.
(313 S.W. 2d Series 281)

*W. Pat Camp, Moursund, Ball, Bergstrom & Barrow* and *Travis M. Moursund,* all of San Antonio, for petitioner.

*Pat Legan* and *John A. Daniels,* both of San Antonio, for respondents.

MR. JUSTICE CALVERT delivered the opinion of the Court.

Suit was by Sam L. Kone against Security Finance Company, a partnership, and its individual members, and against Felix Chapa, owner of Chapa Motors, and B. T. Woodard. Kone sought a judgment against the defendant Woodard vesting in plaintiff the title to two Chevrolet automobiles and, alternatively, a judgment against all other defendants of compensatory and exemplary damages. By cross-action Woodard sought a recovery of title to and possession of the two automobiles and, alternatively, a recovery of damages against its co-defendants.

Judgment was rendered on a special jury verdict that the plaintiff take nothing against Woodard and Chapa, but that he recover compensatory damages in the sum of $3479.00 and exemplary damages in the sum of $2000.00 against Security Finance Company and its partner-members. Woodard was awarded title to and possession of the two automobiles.

Plaintiff did not appeal from that portion of the judgment denying him a recovery of the automobiles nor from that portion denying him a recovery of damages against Chapa, and those matters are not in issue. On an appeal perfected by Security and its partner-members from the judgment adverse to them, the Court of Civil Appeals reversed and remanded the cause for retrial. 307 S.W. 2d 163.

Kone's suit grew out of his purchase of two Chevrolet automobiles from Chapa Motors. In payment for the automobiles Kone executed and delivered to Chapa Motors three checks payable to Chapa Motors in the respective sums of $200.00, $1800.00 and $1479.00. The checks were endorsed by Chapa Motors by one Elmo Thompson and were delivered to Security with directions by Thompson that the proceeds of the two larger checks be applied to the payment and discharge of debts held by Security against Chapa growing out of the sale of two other automobiles to one Beard and one Cobb. They were so applied. Security paid Thompson $200.00 in cash for Kone's check in that sum. The

checks were presented to and paid by the bank on which they were drawn and were charged to Kone's account.

Title papers to the two automobiles were held by Woodard, another dealer, who declined to deliver them until he had been paid the sum of $3438.00. Kone was thus out his money but was unable to obtain title to the automobiles.

Kone's prayer for damages against Security and its partner-members was predicated on three alternative legal theories: (1) that Security had taken control of and was in fact operating Chapa Motors; (2) that in the purchase and sale of the automobiles in question Security was the real principal and Chapa its agent, and (3) that the funds derived by Security from the checks were held in trust for Kone. These matters were all put in issue by Security's answer, it and its partner-members contending that Security was a holder in due course of the checks and entitled to protection as such.

The case was submitted to the jury on special issues. The jury found that Security had not taken over and was not operating Chapa's business for its own benefit (14), but that the two automobiles were sold by Woodard to Security (1) through Chapa (3) who was Security's agent in the sale to Kone (16); that when Woodard, without negligence on his part (9), delivered the two automobiles to Chapa it was agreed that he would be paid $3438.00 therefor (5 requested by Woodard) and that title would not pass until payment was made (5); that when Security received Kone's checks it knew or should have known of the agreement with Woodard (6 requested by Woodard) and also knew that Kone's checks should be applied to payment of the purchase price to Woodard (1 requested by Kone) and to the payment of taxes and license and transfer fees (2 requested by Kone); that upon authorization of Elmo Thompson, an employee and agent for Chapa (11), who acted within the scope of his employment (12), Security, then knowing or being charged with notice that Woodard had not been paid (13), received and converted Kone's checks to its own use and benefit (15) by applying the same on a prior indebtedness, and thus perpetrated a wilful fraud on Kone (18) for which it should be punished by payment of exemplary damages to Kone in the sum of $2000.00 (19). In answer to special issue 20, however, the jury found that at the time the Kone checks were endorsed and delivered to Security by Chapa Motors, Security was a holder thereof in due course.

On motion of Kone the trial court disregarded the answer of the jury to issue 20 and, as above indicated, rendered judgment for Kone against Security. Reversal by the Court of Civil Appeals was predicated on asserted error of the trial court in disregarding the answer to issue 20. The Court of Civil Appeals held that there was evidence to support the finding that Security was a holder in due course of Kone's checks, and that that finding was in necessary conflict with the finding that Chapa was acting as Security's agent in making sale of the automobiles to Kone. There is no doubt that the finding in answer to issue 20 is in conflict with several of the other findings.

Kone seeks to overturn the judgment of the Court of Civil Appeals and sustain the action of the trial court in disregarding the answer of the jury to issue 20 on two grounds, viz: (1) the evidence establishes as a matter of law that Security was not a holder in due course of the checks, and (2) the issue was an immaterial and superfluous one and should never have been submitted.

Section 52 of Article 5935, Vernon's Annotated Texas Statutes, defines a holder in due course as one who has taken an instrument under the following conditions: "1. That it is complete and regular upon its face; 2. That he became the holder of it before it was overdue; and without notice that it had been previously dishonored, if such was the fact; 3. That he took it in good faith and for value; 4. That at the time it was negotiated to him he had no notice of any infirmity in the instrument or defect in the title of the person negotiating it."

Petitioner Kone does not question that when the checks were negotiated by Chapa Motors to Security they were complete and regular on their faces, were not overdue, and had not been dishonored. He insists, however, that Security did not furnish a consideration deemed valuable in law, and that the evidence establishes conclusively that Chapa Motors' title to the checks was defective and that Security took the checks in bad faith.

■ The contention that Security did not furnish a valuable consideration for the checks is based upon the fact that they were credited on pre-existing debts. The contention is overruled. Petitioner recognizes that Section 25 of Article 5933, V.A.T.S., provides that "An antecedent or pre-existing debt constitutes value; and is deemed such whether the instrument is payable on demand or at a future time." That was the rule in this state even

before the adoption of the Negotiable Instruments Law, Herman v. Gunter, 83 Texas 66, 18 S.W. 428, 429; Adams v. Williams, 112 Texas 469, 248 S.W. 673, 676, and it is still the rule. Taylor & Co. v. Nehi Bottling Co., Texas Civ. App., 30 S.W. 2d 494, 497, writ refused. The argument made, however, is that the statutory provision should not apply when the pre-existing debt is past due. Our courts have recognized no such limitation, Alliston v. Williams, Texas Civ. App., 76 S.W. 2d 803, writ dismissed, 129 Texas 406, 104 S.W. 2d 847, possibly because they have no authority to delimit the statute.

We may assume that Chapa Motors' title to the checks was defective by virtue of the provisions of Section 55 of Article 5935, V.A.T.S. which provides, in part, that "The title of a person who negotiates an instrument is defective within the meaning of this Act when he obtained the instrument * * * by fraud, * * * or when he negotiates it in breach of faith, or under circumstances as amount to a fraud." But, to prevent Security from being a holder in due course it must appear that Security had actual knowledge of the defect in Chapa's title to the checks, or knowledge of such facts that its action in taking them "amounted to bad faith." Section 56, Article 5935, V.A.T.S. The record does not disclose actual knowledge by Security.

We had occasion in Citizens Bridge Co. v. Guerra, 152 Texas 361, 258 S.W. 64, to determine the meaning of the term "bad faith" as used in the foregoing section of the Negotiable Instruments Law and to notice the standards to be used in testing it. 258 S.W. 2d 69-70. From an examination of a number of cases there cited we there recognized that the question is normally one of fact; that the test is good or bad faith and not diligence or negligence; that "Knowledge of facts merely sufficient to cause one of ordinary prudence to make inquiry, with failure to make such inquiry, is not evidence of bad faith"; that even gross negligence is, at most, only evidence of bad faith; that to constitute evidence of bad faith the facts known to the taker must be such as to form a reasonable basis for an inference that in acquiring the instrument he acted in dishonest disregard for the rights of others; that bad faith may be shown by a wilful disregard of and refusal to learn the facts when available, and that "Wilful ignorance is the equivalent of bad faith and bad faith may be shown by a wilful disregard of and refusal to learn the facts when available and at hand."

■ Bad faith, like motive and other such ultimate facts constituting state of mind, must, of necessity, usually be established

as an inference flowing from words, acts and conduct proved. Smith v. Jungkind, Texas Civ. App., 252 S.W. 2d 596, 599, writ refused; Ashby v. State, Texas Civ. App., 283 S.W. 2d 270, 273-274, no writ history. Conceivably, the nature of the words, acts and conduct proved might be such as to authorize and justify a court in taking a case from the jury and in drawing the ultimate fact inference as a matter of law, but that can rarely be so.

In his brief in this Court petitioner sets out a number of collateral facts proved, some of which he characterizes as admissions, which he says are such as to establish Security's bad faith as a matter of law. The evidentiary facts to which reference is made are that Chapa Motors' business affairs were in a deplorable condition and that Security had knowledge of that fact; that Chapa was heavily indebted to Security who earlier had been, but no longer was, financing automobiles purchased by Chapa for resale; that Security was financing automobiles for purchasers from Chapa and that each such debt was secured by lien on the particular automobile; that Chapa was "kiting" titles to automobiles, that is, that he was using purchase money of one automobile to clear the title to another, and that Security had knowledge of that fact; that Security's manager spent from 50% to 60% of his time at Chapa's place of business keeping in touch with sales, taking inventory of automobiles on which Security held liens and otherwise acquainting himself with many of the details of Chapa's business, during which time he learned that Chapa was having trouble with his creditors and with other people who had left automobiles with him which he sold but did not promptly pay for; that some automobiles on which Security had liens had been sold without the proceeds being turned over to Security, and the purpose of Security's manager and another employee in spending so much of their time at Chapa's place of business was to protect Security against Chapa's failure to apply proceeds of sales of such automobiles to the discharge of Security's debts and liens; that Security held title to two automobiles, designated in the record as the Cobb and Baird automobiles, which were sold by Chapa without Security's knowledge, and the proceeds of the sale were not delivered to Security; that when Kone's checks were negotiated to Security with directions that they be applied toward payment of Chapa's debt growing out of the sale of the Cobb and Baird automobiles Security's manager was advised by Chapa's manager that Chapa was in hot water about the two automobiles and had to have the certificates of title right away.

In support of the jury's finding that it was a holder of the checks in due course and therefore received them in good faith, Security points out that the checks were regular on their faces with no notation of any character indicating that they represented proceeds of a sale of Woodard's automobiles or indicating that certificates of title to the automobiles sold to Kone had not been delivered at the time of sale; that there is evidence supporting the conclusion that Security did not know that automobiles owned by Woodard had been sold to Kone and did not know until about a month after it received the checks that Kone had purchased automobiles to which he had been unable to obtain certificates of title; that Chapa was selling automobiles for many dealers and sold thousands of automobiles in a year's time, some of which were sold for cash and paid for at the time of sale and some of which were financed through other finance companies who also kept their representatives at Chapa's place of business. If there is evidence to the effect that Chapa at the time in question owned none of the automobiles being sold by him and that Security had knowledge of that fact, our attention is not directed to it.

It may well be that the evidence detailed would justify a holding that Security was guilty of gross negligence in receiving the checks and applying them at Thompson's direction to payment of the Cobb and Baird debts without making inquiry into the details of the transaction with Kone, but if so that holding would only mean that the question of bad faith was still one for the jury. West v. First Baptist Church of Taft, 123 Texas 388, 71 S.W. 2d 1090, 1097. Beutel's Brannan Negotiable Instruments Law, Seventh Edition, pp. 772-774, lists more than two pages of cases from other jurisdictions in support of the rule stated in these words: "Merely suspicious circumstances sufficient to put a prudent man on inquiry, or even gross negligence on the part of the plaintiff, at the time of acquiring the note, are not sufficient of themselves to prevent recovery unless the jury find from the evidence that plaintiff acted in bad faith." We cannot say, in the face of the jury finding, that Security was guilty of bad faith as a matter of law. Citizen's Bridge Co. v. Guerra, supra.

■ We do not share petitioner's view that issue 20 was an immaterial and superfluous issue. Security defended petitioner's suit on the ground that it was a holder of the checks in due course. That was an affirmative defense to petitioner's suit and Security was entitled to have its defense submitted to the jury. In view of the fact that the checks were regular on their faces,

were not overdue and had not been dishonored it would perhaps have been better had the defensive issue or issues been narrowed to defects in Chapa's title and to Security's good faith in accepting them.

By cross-point before the Court of Civil Appeals petitioner complained of an order of the trial court setting aside an interlocutory default judgment he had obtained against one John Barry Rudd. The Court of Civil Appeals did not pass on the cross-point. In his application for writ of error petitioner, by point of error, complains of the same matter.

In his first amended petition Kone sued Security Finance Company, a partnership, and certain individuals as members of the partnership, among whom was Sara E. Pennington. By special answer Sara E. Pennington pleaded her coverture, setting up that she was the wife of Barry Rudd. A separate answer was filed on behalf of the partnership. Plaintiff later filed his third amended petition in which, with Security and the other individual partners, Sara E. Pennington Rudd and her husband John Barry Rudd were named as partners and were sued as individual members of the partnership. Rudd failed to answer the suit although duly served with citation, and upon proof of damages the trial court entered an interlocutory default judgment against Rudd for $3479.00 compensatory and $3000.00 exemplary damages. Following return of the jury's verdict on the trial of the case the court, on motion, set aside the interlocutory judgment against Rudd and rendered and entered a joint and several judgment against the partnership and all of the individual members, including Rudd.

■ Petintioner's point is not well taken. The trial court had continuing control of the interlocutory order with power to set it aside even at a subsequent term of court. Texas Land & Loan Co. v. Winter, 93 Texas 560, 57 S.W. 39; 25 Texas Jur. 549, Judgments § 153.

The judgment of the Court of Civil Appeals is affirmed.

Opinion delivered May 21, 1958.