**TEXAS CRUSHED STONE COMPANY et al., Appellants,**

v.

**Wyatt Jefferson WEEKS, Appellee.**

**No. 11297.**

Court of Civil Appeals of Texas.

Austin.

May 5, 1965.

Rehearing Denied June 2, 1965.

Fagan Dickson, Cofer, Cofer & Hearne, John D. Cofer, Austin, for appellants.

Byrd, Davis & Eisenberg, Tom H. Davis, Austin, Brown, Kronzer, Abraham, Watkins & Steely, W. James Kronzer, Robert H. Roch, Houston, for appellee.

PHILLIPS, Justice.

Plaintiff Weeks sued Texas Crushed Stone Company and E. B. Snead, its president in 1958 for damages for personal injuries received by Weeks when an airplane piloted by Snead crashed after an attempted landing at a private landing strip at a stone quarry operated by Texas Crushed Stone Company at Fairland in Burnet County, Texas.

From a judgment for damages awarded Weeks on a jury verdict, the Stone Company and Snead have perfected an appeal to this Court.

We affirm the judgment of the trial court.

Appellants' first point of error is that there was an interlocutory judgment entered upon the jury trial of the separate issue as to settlement and agreement not to sue and such interlocutory judgment should have determined the case on the rendition of final judgment.

When this case went to trial, appellants, defendants below, plead as one of their defenses to Weeks' cause of action an alleged accord and satisfaction and/or release. Weeks then filed a motion for summary judgment which was overruled.

Thereafter Weeks filed a motion to sever the matter as to the alleged accord and satisfaction and/or release and to try that issue separately. See Rule 174(b), Texas Rules of Civil Procedure. The trial court granted this motion.

On a hearing of this separate issue, the jury found that after the crash in question Weeks and Snead entered into an agreement that Weeks would not assert any claim for damage against the Stone Company or Snead arising out of the abovementioned crash and that the Stone Company would pay his hospital and doctor bills and advance him a sufficient allowance to cover the difference between his workmen's compensation, if any, he should be paid and his salary with his then employer. The jury among other issues not pertinent here found that Snead and the Company had not failed to make the agreed payments.

Judgment was entered in March of 1961 that a valid agreement existed in accordance with the abovementioned jury answers. No motion was ever filed by appellants requesting that Weeks' case be dismissed or that final judgment against Weeks be entered and no action was ever taken by the court dismissing Weeks' principal cause of action.

26 days after judgment, Weeks filed a motion for a new trial on the separate issue of agreement not to sue, which was overruled.

Weeks then gave notice of appeal to this Court, which appeal was dismissed.

In June of 1964, Weeks' principal cause of action came to trial, at which time appellants did not request the court to dismiss this cause of action. Thereafter, the case was tried resulting in a jury verdict favorable to Weeks.

By Motion in Limine filed at the June, 1964 trial, and the order of the court thereon, the defendants therein (appellants) were instructed not to refer to their plea in bar, based on the agreement not to sue, or the separate trial thereon, or the verdict and judgment rendered thereon.

At the close of Weeks' (plaintiff) testimony, appellants filed a trial amendment specifically pleading the interlocutory judgment on the separate issue. Then the appellants made a motion for an instructed verdict and renewed it at the close of testimony. These motions were overruled. Appellants then made a Motion Notwithstanding the Verdict and an Amended Motion for New Trial.

Weeks had also filed a Motion for Judgment, which requested the court to disregard certain issues. In this motion Weeks re-urged his motion for summary judgment regarding the severed issues; re-urged his motion for instructed verdict regarding the severed issues; maintained that there was no basis in law to support the entry of the interlocutory order based on accord and satisfaction and/or settlement, for the reason that no evidence was introduced showing any binding agreement was ever reached between the parties hereto for a release and/or accord and satisfaction or an agreement to bind Weeks from suing appellants herein.

Weeks further sought the court to disregard the interlocutory order because: the findings of the jury on special issues

Nos. 1 and 2 in the hearing on the severed issue, and the interlocutory judgment entered thereon, do not establish with sufficient definiteness and certainty an agreement upon which Weeks can or could enforce or obtain affirmative relief; that there was no evidence to support the answers made to special issues Nos. 1 and 2 at the hearing on the severed issues; that the findings of the jury on the special issues submitted in the severed hearing and the interlocutory judgment entered thereon do not establish either accord and satisfaction or release; that as a matter of law the appellants breached any agreement or understanding that could constitute an accord or release; that the trial court erred in the trial of the severed issues for not sustaining Weeks' objections to the charge on the severed issues; that the special issues submitted on the trial of the severed issues do not constitute a basis for judgment on behalf of the appellants, and taken as a whole they simply do not form any basis for any judgment that would be a bar to Weeks' tort cause of action; that the court should have granted Weeks' Motion for judgment non obstante veredicto after the jury answered the severed issues.

As stated above, the trial court entered judgment for Weeks and disregarded the answers to the prior special issues submitted in the trial on the severed issues. The court found in its judgment that said interlocutory judgment and special issues specified therein should be set aside and disregarded as presenting a basis for denying appellee (Weeks) relief.

■ The trial court had power to set aside the interlocutory order at any time prior to the finality of the judgment. Texas Land & Loan Co. v. Winter, 93 Tex. 560, 57 S.W. 39, 41 (1900); Wichita Falls & S.R. Company v. McDonald, 141 Tex. 555, 174 S.W.2d 951, 952 (1943); Kone v. Security Finance Co., 158 Tex. 445, 313 S.W. 2d 281, 286 (1958); Kuehn v. Kuehn, 242 S.W. 719, 720 (Tex.Com.App.1922). Nor

does the prior interlocutory order have any limiting effect on the final judgment actually entered. In Texas Land & Loan Co. v. Winter, supra, perhaps the leading Texas case, the Supreme Court stated:

"* * * Notwithstanding the opinion previously expressed in the ruling on the exceptions, the court, when it came to finally dispose of the cause, had complete power to render such judgment as in its opinion the rights of the parties demanded; and, if such judgment was inconsistent with the order made upon the exceptions, the order must give way to the judgment, instead of limiting its effect. * * *"

■ Since the trial court had the power to set aside this interlocutory order, and no record is before this Court regarding the facts relating to the severed issues, all presumptions must be in favor of the judgment for appellee. Houston Fire & Casualty Co. v. Walker, 152 Tex. 503, 260 S.W. 2d 600, 603 (1953); Armstrong v. West Texas Rig Company, Tex.Civ.App., 339 S.W.2d 69, 73 (El Paso, 1960) writ ref., n. r. e.; Kavanagh v. Holcombe, Tex.Civ. App., 312 S.W.2d 399, 402 (Houston, 1958,) writ ref., n. r. e.; compare Dennis v. Hulse, 362 S.W.2d 308, 310 (1962), Supreme Court.

Apart from the insufficiency of the record, none of the cases cited by appellant in its brief are applicable to our situation. The main case relied upon by appellant is Locke v. Atchison, Topeka & Santa Fe R. R. Co., (10th Circuit) 309 F.2d 811. In that case an issue regarding release was severed from the main cause of action and tried to a jury. The jury found in favor of the defendant on the release. The trial court then entered judgment for the defendant and dismissed plaintiff's cause of action. A final judgment was entered dismissing plaintiff's cause of action and the plaintiff appealed. This is entirely different from the present case, because no final judgment was ever entered on the severed issue nor one dismissing appellee's cause

of action. The only final judgment entered was one in favor of appellee after the prior interlocutory order was set aside.

As stated by the Court in Kansas University Endowment Association v. King, 162 Tex. 599, 350 S.W.2d 11 (1961), there can only be one final judgment in a cause. See Rule 301, T.R.C.P. In the instant case the only final judgment is the one now before the Court, and without a Statement of Facts this Court must presume the trial court had a valid basis for setting aside.the prior interlocutory order.

In appellee's motion several grounds were set forth as a basis to disregard the interlocutory order, and it must be presumed that the court found that said grounds were sufficient to set aside the interlocutory order. Houston Fire & Casualty Ins. Co. v. Walker, supra.

We overrule this point.

Appellants' second point of error is that of the court in the manner of the submission of special issues 1, 3, 5, 7 and 15 because they are duplicitous and assume that the defendant (appellant Snead) committed the alleged negligent act.

We overrule this point.

We hold that these special issues are not multifarious or duplicitous, but are submitted in the standard form used for "lookout," "speed," or "application of brakes" that the Courts have approved in automobile cases.

Special Issue No. 1 inquires whether or not on the occasion in question the defendant failed to make such observation of his air speed indicator as would have been made by a person of ordinary prudence in the exercise of ordinary care under the same or similar circumstances.

Special Issue No. 3 inquires whether or not on the occasion in question the defendant approached for a landing at a rate of speed in excess of that at which a person of ordinary prudence in the exercise of ordinary care would have done under the same or similar circumstances.

Special Issue No. 5 inquires whether or not the defendant made a higher approach than would have been made by a person of ordinary prudence in the exercise of ordinary care under the same or similar circumstances.

Special Issue No. 7 inquires whether or not the defendant attempted to land further down the runway than a person of ordinary prudence in the exercise of ordinary care would have done under the same or similar circumstances.

Special Issue No. 15 inquires whether or not the defendant failed to change his flaps after he touched down in such a manner as would have been done by a person of ordinary prudence in the exercise of ordinary care under the same or similar circumstances.

The Courts have held that it is proper to submit the issues in the above form rather than submitting two separate issues. The case of Roy Lee Lumber Company v. Green, 299 S.W.2d 349 (Beaumont, 1959,) writ ref., n. r. e., held the following issue to be proper:

"Do you find from a preponderance of the evidence that on the occasion in question Willis King operated his truck more closely to the automobile of Thomas Green than a person of ordinary prudence in the exercise of ordinary care would have operated same?"

The appellants in that case objected to said issue on the ground of duplicity, as in this case. The Court of Civil Appeals specifically holds that submitting the issue in the above form is proper. The San Antonio Court of Civil Appeals held in Lander v. Jordan, 87 S.W.2d 1109 that it was

proper to submit a lookout issue in the following form:

"Do you find from a preponderance of the evidence that the plaintiff, at the time of or just prior to the injury, failed to keep such a lookout for his own safety as a person of ordinary care would have kept under the same or similar circumstances?"

The Court of Civil Appeals in Vardilos v. Reid, 320 S.W.2d 419 held that the following issue is proper:

"Do you find from a preponderance of the evidence that Peter Vardilos failed to apply his brakes at a time that a person of ordinary prudence in the exercise of ordinary care acting under the same or similar circumstances would have applied his brakes?"

The Supreme Court in the City of Fort Worth v. Lee, 143 Tex. 551, 186 S.W.2d 954, 159 A.L.R. 125, (1945), also indicates that it is proper to submit the lookout issue in the form submitted by the trial court in the instant case.

Appellant has not complained of the form of Special Issues Nos. 9, 11 or 13. Special Issue No. 9 inquires whether or not in not going around before he touched down the first time, E. B. Snead failed to use ordinary care. This issue refers to Snead's failure to circle the field before landing. Special Issue No. 11 inquires whether or not in not going around before he touched down the second time, E. B. Snead failed to use ordinary care. Special Issue No. 13 asks whether or not E. B. Snead's attempt to take off after using his brakes was a failure to use ordinary care.

■ The Supreme Court has specifically held that it does not matter whether some of the special issues are multifarious and comment on the weight of the evidence when there are other issues that the judgment may be predicated upon. Tex-Jersey

Oil Corporation v. Beck, 157 Tex. 541, 305 S.W.2d 162, 68 A.L.R.2d 1062, (1957); Kelley v. Goodrum, 378 S.W.2d 935 (Houston, 1964). The Supreme Court used the following language in the Beck case:

"* * * In response to Special Issue No. 1 the jury found that the act of petitioners in storing oil in a tank which was not vapor proof was a proximate cause of the explosion and the deaths of Christine Beck, Lorenzo Beck and Elizabeth Beck. Petitioners' Point 7 asserts that liability may not be predicated on the answer to special issue No. 1 because the issue was fatally defective in that it was multifarious and commented on the weight of the evidence and because the ordinance in question is invalid. Inasmuch as we have held that petitioners' liability may be predicated on the jury's answer to special issues 2, 3 and 4, the defects, if any, in special issue No. 1 and the invalidity of the ordinance become immaterial."

■ Appellants' third point of error is that there is no evidence to support the affirmative answers of the jury to special issues numbers 1, 3, 5, 7, 9, 11 and 15 respectively.

These issues are as follows:

"SPECIAL ISSUE NO. 1: Do you find from a preponderance of the evidence that on the occasion in question E. B. Snead failed to make such an observation of his air speed indicator as would have been made by a person of ordinary prudence in the exercise of ordinary care under the same or similar circumstances?

"SPECIAL ISSUE NO. 3: Do you find from a preponderance of the evidence that on the occasion in question E. B. Snead approached for a landing at a rate of speed in excess of that at which a person of ordinary prudence in the exercise of ordinary care would

have done under the same or similar circumstances?

"SPECIAL ISSUE NO. 5: Do you find from a preponderance of the evidence that E. B. Snead made a higher approach than would have been made by a person of ordinary prudence in the exercise of ordinary care under the same or similar circumstances? "SPECIAL ISSUE NO. 7: Do you find from a preponderance of the evidence that on the occasion in question E. B. Snead attempted to land further down the runway than a person of ordinary prudence in the exercise of ordinary care would have done under the same or similar circumstances?

"SPECIAL ISSUE NO. 9: Do you find from a preponderance of the evidence that in not going around before he touched down the first time E. B. Snead failed to use ordinary care?

"SPECIAL ISSUE NO. 11: Do you find from a preponderance of the evidence that in not going around before he touched down the second time E. B. Snead failed to use ordinary care?

"SPECIAL ISSUE NO. 15: Do you find from a preponderance of the evidence that on the occasion in question E. B. Snead failed to change his flaps after he touched down in such manner as would have been done by a person of ordinary prudence in the exercise of ordinary care under the same or similar circumstances?

Appellant Snead testified: "That he had complete control of the airplane; he did not know his air speed; that he landed too long; that he was flying too fast; that he made a too high and too fast approach to the air strip; that the airplane touched down about the middle of the strip; that it was easier to go around before the air-plane touched· down the first time; that he did not change the flap settings; that he touched down farther down the runway than he normally liked; that he knew he should have touched down in the first one-third of the strip, but did not do so; that he came in too high and too fast; that he could have gone around after touching down the first time; that he recognized the flaps were not at the proper setting."

Bruce Hallock, an expert witness, testified, among other things, to the following: "That a pilot under the circumstances of Snead should watch his air speed indicator; that a pilot under the circumstances of this landing should not come in too high; that a pilot can tell readily whether or not he is too high; that if he came in too high and too fast, he should not land and circle around; that a thermal could cause a plane to bounce only if there was excessive air speed; that Snead could have taken off after he touched down the first time; that after he hit the brakes he should stay down; that flaps should be returned to their-off position; that flaps can be changed in a second or less; that the pilot is in complete control of the plane; that Snead could have landed safely on this strip if he used ordinary care."

We overrule this point and hold that there is sufficient evidence to support the issues complained of.

Inasmuch as we have affirmed the trial court's judgment as to specific acts of negligence on the part of the appellant Snead and the component elements thereto, it is unnecessary for us to discuss appellants' fourth and fifth points of error, namely, that special issue 17 as submitted was a general charge; and if so intended, improperly submitted the case under the rule of res ipsa loquitur.

We affirm the judgment of the trial court.