**FIDUCIARY MORTGAGE COMPANY, Appellant,**

v.

**CITY NATIONAL BANK OF IRVING, Appellee.**

No. 05–87–01004–CV.

Court of Appeals of Texas, Dallas.

Oct. 19, 1988.

Rehearing Denied Dec. 19, 1988.

J. Kent Davenport, Leonard A. Epstein, Dallas, for appellant.

Christopher M. Weil, Anthony A. Petrocchi, Dallas, for appellee.

Before ENOCH, C.J., and DEVANY and THOMAS, JJ.

ENOCH, Chief Justice.

Fiduciary Mortgage Company (Fiduciary) sued City National Bank of Irving (CNB) for breach of contract and for failure to pay loan servicing and participation fees. Trial was before the court without a jury and judgment was rendered for CNB. Fiduciary appeals in thirty-two points of error. Essentially, Fiduciary complains that the evidence was neither legally, nor factu-

ally sufficient to support a number of the trial court's findings of fact and conclusions of law, that certain conclusions of law were not supported by findings of fact, that costs were improperly taxed, and that the trial court erred in allowing CNB to present witnesses at the trial on the issue of damages. CNB appeals in three cross-points of error. It urges that the trial court erred in awarding sanctions against CNB and striking its pleadings. Concluding that the trial court erred in finding facts contrary to those established as a matter of law and contrary to the overwhelming weight of the evidence, we reverse the judgment of the trial court and remand for a new trial on the issues of damages and attorney's fees.

## The facts of the case

Fiduciary's petition alleges that CNB, "formerly known as First National Bank of Irving," entered into a series of contracts to pay Fiduciary service fees for seven loans. The petition also alleges that CNB contracted with Colson Services Corporation to pay Colson purchase participation fees in eight other loans, which Colson would then forward to Fiduciary. According to Fiduciary's pleadings, CNB failed to pay any of these fees. Additionally, Fiduciary's petition alleged that CNB loaned $6,500 to Fiduciary for Fiduciary's participation in "Cheung's Rice Bowl" loan, with the understanding that CNB would buy the loan back if it went into default. Fiduciary pleaded that CNB assigned Fiduciary's note to the Federal Deposit Insurance Company (FDIC). The loan went into default, but CNB did not repurchase it.

CNB's answer alleges that it is not the successor of First National Bank of Irving (FNBI). CNB alleged that it had merely acquired certain assets of FNBI from the FDIC after FNBI had been declared insolvent and the FDIC had been appointed its receiver. CNB stated that it had no agreements with Fiduciary as to any of the loans in question and that it was not bound by any agreements made by FNBI. Further, CNB denied that it had made any agreement with Colson Services Corporation. CNB averred that after acquiring some loans from the FDIC, CNB learned that Colson served as a fiscal transfer agent with respect to participation disbursements from some loans. CNB stated that it had remitted participation amounts to Colson as the transfer agent. CNB also asserted that some of the loans remained assets of FDIC. Finally, with regard to the Cheung's Rice Bowl loan, CNB contended that any agreements were between Fiduciary and FNBI rather than between Fiduciary and CNB and that the loan remained the property of the FDIC.

Trial was set for April 16, 1987. On April 8, 1987, Fiduciary filed a motion to disqualify CNB's counsel. CNB's counsel withdrew and CNB was granted a continuance to find substitute counsel. In the interim, Fiduciary served a notice of deposition and subpoena duces tecum on CNB for April 28, 1987. Although the parties' accounts of the events following this notice vary somewhat, it is clear that CNB had not obtained permanent counsel as of April 28th. Fiduciary contends that an "interim" attorney for CNB called and requested that the deposition be postponed. Fiduciary states that it agreed, but only on the condition that the deposition be definitely scheduled for May 6, 1987. CNB contends that it did not obtain permanent counsel until May 6th, but that its new counsel was hired on that date. However, this counsel insisted that the deposition and trial be postponed. CNB further responds that, prior to May 6th, it contacted Fiduciary to postpone the deposition, that Fiduciary agreed to postpone the deposition, but that it never called CNB back to reschedule the deposition.

Fiduciary filed a motion to compel and for sanctions. The trial court granted Fiduciary's motion for sanctions and struck CNB's pleadings. The case went to trial before the court, ostensibly on the sole issue of damages. At the trial however, and over objection by Fiduciary, CNB called witnesses and introduced evidence concerning liability. At the conclusion of the trial, the trial court filed findings of fact and conclusions of law that were consistent with CNB's stricken pleadings on

liability issues. The trial court also found that Fiduciary's evidence of damages did not establish with reasonable certainty that any amount was owed to Fiduciary. The trial court entered a judgment that Fiduciary take nothing in its suit against CNB.

### CNB's witnesses

■ In its first point of error, Fiduciary contends that the trial court erred in allowing CNB to call witnesses at the trial on damages. Fiduciary contends that, at the hearing on damages, CNB had the right to be present, to object to the admission of evidence, and to cross-examine witnesses, but that it could not call its own witnesses. Fiduciary cites *Illinois Employers Insurance Co. of Wausau v. Lewis*, 582 S.W.2d 242 (Tex.Civ.App.—Beaumont), *writ ref'd n.r.e.*, 590 S.W.2d 119 (Tex.1979), (per curiam), and *Rainwater v. Haddox*, 544 S.W. 2d 729 (Tex.Civ.App.—Amarillo 1976, no writ), in support of this argument. These cases do not stand for the proposition that a defendant is completely barred from calling witnesses concerning the amount of damages owed once liability has been established. CNB was entitled to offer proof and call witnesses in mitigation of damages. *See Maywald Trailer Co. v. Perry*, 238 S.W.2d 826, 827 (Tex.Civ.App.—Galveston 1951, writ ref'd n.r.e.). Fiduciary's first point of error is overruled.

### The trial court's findings on liability

■ In points of error two, three, five, six, seven, eight, nine, ten, twelve, thirteen, fifteen, sixteen, seventeen, and eighteen, Fiduciary contends that there is no evidence or insufficient evidence to support the trial court's findings of fact numbers one through seven. At the outset, we note that these points of error are multifarious as each point attacks more than one separate finding or conclusion of law. However, because Fiduciary's argument under these points of error is such that it directs this Court's attention to the asserted errors, we will address the points. *See* TEX. R.CIV.P. 74; *Atlantic Richfield Co. v. Holbein*, 672 S.W.2d 507, 517 (Tex.App.— Dallas 1984, writ ref'd n.r.e.).

Fiduciary complains of the following findings:

1. Plaintiff Fiduciary Mortgage Company ("Fiduciary") entered into a series of contracts with First National Bank of Irving involving payment of servicing fees in connection with the following loans, which are identified by borrower:
 A. G & G Trucking
 B. Joy Wright
 C. Riggan Enterprises
 D. Diversity, Inc.
 E. Edwards, Inc.
 F. Lens Tech
 G. Holloway Office Supply
 H. Hurst Video
 I. Lhota Enterprises
 J. Infirmacare
 K. Video Works
 L. Wood, Etc.
 M. Soccer Center
 N. Texas Law Man
 O. Trifovesti
 P. Cheung's Rice Bowl,
 and which loans shall be collectively referred to herein as "the Loans."

2. *Defendant City National Bank of Irving ("CNB Irving") is a separate and independent entity from First National Bank of Irving.* In April of 1986, First National Bank of Irving was declared insolvent and the Federal Deposit Insurance Corporation ("FDIC") was appointed as receiver of that bank and acquired the assets of same. CNB Irving purchased some of the assets of First National Bank of Irving from FDIC, as receiver, but did not purchase many loans under which Fiduciary seeks recovery of servicing fees.

3. FDIC, a receiver for First National Bank of Irving, *owns* the loans identified as Diversity, Inc., Edwards, Inc., Lens Tech, Hurst Video, Soccer Center, Texas Law Man, and Cheung's Rice Bowl ("the FDIC loans") for which Fiduciary claims entitlement to recover loan servicing fees from CNB Irving.

4. The FDIC loans under which Fiduciary seeks to recover loan servicing fees *are not assets* of CNB Irving, and do not, therefore, give rise to any liability on the part of CNB Irving for payment to Fiduciary of those loan servicing fees.

5. The agreement, if any, to loan Fiduciary $6,500.00 in connection with the Cheung's Rice Bowl loan was an agreement between Fiduciary and First National Bank of Irving, to which agreement, if any, *CNB Irving was not a party.*

6. The agreement, if any, under which Colson Services Corporation was to receive purchase participation in connection with the Hurst Video, Lhota Enterprises, Infirmacare, Video Works, Wood, Etc., Soccer Center, Texas Law Man, and Trifovesti is an agreement between First National Bank of Irving and Colson Services Corporation, to which agreement, if any, *neither Fiduciary nor CNB Irving were parties.*

7. Fiduciary's right, if any, to recover loan servicing fees is contingent upon borrowers' payments to the person holding the loan. Therefore, Fiduciary may not recover any amounts for servicing fees on non-performing loans.

(Emphasis added.)

Although Fiduciary states in its points of error that there is "no evidence" to support the trial court findings, in its argument Fiduciary treats these points of error as matter of law points.[1] In the argument under these points of error, Fiduciary contends that "a fact that is judicially admitted does not require evidence; rather, it is established conclusively as a matter of law and precludes the trial court from finding facts to the contrary."

It is true that a defendant's failure to file an answer is taken as an admission of the allegations in the plaintiff's petition. *See Watson v. Sheppard Federal Credit Union*, 589 S.W.2d 742, 744 (Tex. Civ.App.—Fort Worth 1979, writ ref'd n.r.

e.). We see no distinction in the treatment of cases between those where the defendant failed to answer in a lawsuit and where the defendant's answer has been stricken from the record as a result of the imposition of sanctions.

In its petition, Fiduciary alleged that CNB contracted to pay to Fiduciary certain fees. This fact was established as a matter of law once CNB's pleadings were struck. *See Watson*, 589 S.W.2d at 744. Therefore, the trial court erred in finding otherwise. Similarly, the trial court erred in finding that some of the loans listed in Fiduciary's petition were not owned by CNB; that the FDIC owned some of the loans; that CNB was not a party to the $6,500 Cheung's Rice Bowl loan agreement; that CNB and Fiduciary were not parties to the agreements involving Colson and that Fiduciary's right to recover loan servicing fees was contingent upon whether the underlying obligors on the loans make the payments. All of these fact findings are contrary to the facts contained in Fiduciary's petition which were established as a matter of law. *See id.* This was reversible error and the findings cannot stand. *See Miller v. First State Bank*, 551 S.W.2d 89, 102 (Tex.Civ.App.—Fort Worth 1977), *aff'd*, 563 S.W.2d 572 (Tex.1978) (trial court is precluded from finding facts to be contrary to those established by judicial admission).

In support of the erroneous trial court findings, CNB contends that the issue of liability was tried by consent, and Fiduciary may not complain on appeal that the trial court made findings in accordance with facts brought out at trial. Our review of the record reveals, however, that there was no trial by consent here. Fiduciary objected on numerous occasions to the testimony brought out by CNB which approached the issue of liability. The trial court, to the very end, made rulings indicating the court's intent to limit testimony to only the issue of damages. CNB, at the end of the trial, reassured the court, in

[1] Where the appellant in a case has the burden of proof on the issue and it is found adversely, the legal insufficiency point should be styled a "matter of law" point. *See* Calvert, *No Evidence and Insufficient Points of Error*, 38 TEXAS L.REV. 361, 364 (1960).

response to Fiduciary's objections that the proffered testimony concerned CNB's liability, that the testimony was offered on the issue of damages "with the understanding that [he was] prevented from doing so otherwise." At most, there was confusion as to whether the testimony concerned liability or damages. For example, the following occurred:

> [COUNSEL FOR CNB]: Do you have any agreements with City National Bank of Irving?
>
> [COUNSEL FOR FIDUCIARY]: Judge, I'm going to object. He's going into liability, which has already been admitted by the Defendant. The sole issue on this case is the amount of damages.
>
> THE COURT: Sustained.

> \* \* \* \* \* \*

> [COUNSEL FOR CNB]: All right, and can you tell me what you recognize on that exhibit?
>
> [WITNESS]: I recognize that exhibit of SBA loans, some of which belong to City National Bank of Irving. Others belong to FDIC.
>
> [COUNSEL FOR FIDUCIARY]: Excuse me, Judge. I want to object to the last testimony and ask that it be struck [sic] for the reason that it is an attempt to get out of the liability issue. The bank has admitted the liability in this matter, so for the purpose of the record, I would like to make that objection to his last statement.
>
> [COUNSEL FOR CNB]: The bank has acknowledged the liability to the Court in sanctions.

> \* \* \* \* \* \*

> [COUNSEL FOR FIDUCIARY]: Very briefly, Your Honor, for purposes of the record, I would also object that this is irrelevant. Again, they are not talking about the amount of my client's damages; they are talking about liability, which we have already discussed.
>
> [COUNSEL FOR CNB]: Your Honor, that's exactly what I'm talking about. The term of the loan shows how many months it runs and whether it's collected or not due and it's highly speculative.

> THE COURT: I'll overrule the objection.

> \* \* \* \* \* \*

> [COUNSEL FOR CNB]: Well, during your discussions with Mr. Lyles, have you ever suggested that he had an agreement with CNB or did he tell you that the agreements were with First National Bank or some other entity?
>
> [COUNSEL FOR FIDUCIARY]: Objection, Your Honor. Again, they keep going back and back again, trying to deny any liability for the reason that they are saying that we sued the wrong person. Again, this is what the whole purpose of the discovery was. I am going to object to them repeatedly going into this area.
>
> THE COURT: Overruled.

> \* \* \* \* \* \*

> [COUNSEL FOR FIDUCIARY]: I have no objection to the document. I would like the record to reflect that I am objecting to any testimony of this witness with respect to loans that are assumed by the FDIC on relevancy grounds, Your Honor, given that liability is admitted.
>
> THE COURT: Why are you offering it?
>
> [COUNSEL FOR CNB]: I'm offering it, really, to establish that some of the monies that have been complained of by Mr. Lyles, with the understanding that I'm prevented from doing so otherwise, but on the issue of damages that FDIC has paid, I'm assuming, the money he's complaining of.
>
> THE COURT: I'll overrule the objection. It will be admitted for the purpose offered, and I understand there's no objection to the document. That is an objection to the witness' testimony and which I will overrule. That document will be admitted.

■ Rule 67 concerning trial by consent applies where it clearly appears from the record as a whole that the parties tried out a controverted issue and that the issue was fully developed. *See* TEX.R.CIV.P. 67; *Praeger v. Wilson,* 721 S.W.2d 597, 603 (Tex.App.—Fort Worth 1986, writ ref'd n.r. e.); *Harrison v. City of San Antonio,* 695 S.W.2d 271, 277 (Tex.App.—San Antonio 1985, no writ). Instead, the record shows

that Fiduciary vigorously resisted CNB's attempts to contest liability. *See Valley Ready–Mix Concrete Co. v. Valley State Bank,* 227 S.W.2d 231, 235 (Tex.Civ.App.—San Antonio 1950, no writ). CNB's contention is meritless. Fiduciary's points of error two, three, five, six, seven, eight, nine, ten, twelve, thirteen, fifteen, sixteen, seventeen, and eighteen are sustained.

### The trial court's findings on damages

■ In addition to its erroneous findings on liability, the trial court found that Fiduciary had failed to prove its damages. In points of error nineteen, twenty, twenty-four, twenty-five, twenty-eight, and twenty-nine, Fiduciary contends that there is no evidence to support the trial court's findings eight through eleven on damages and, further, that these findings are against the great weight and preponderance of the evidence. Findings eight through eleven are as follows:

8. The evidence presented by Fiduciary at trial in support of its claims for damages is based upon uncertain estimates and future projections of payments in connection with non-performing loans and potentially non-performing loans, and Fiduciary seeks recovery of servicing fees from loans which are the assets of FDIC and not CNB Irving.

9. The evidence presented by Fiduciary at trial in support of its claims for damages is speculative and based upon conjecture and does not establish by a preponderance of the evidence an amount for recovery of loan servicing fees with reasonable certainty.

10. Fiduciary failed to show by a preponderance of the evidence that it is entitled to recover any amount for loan servicing fees from CNB Irving.

11. Fiduciary failed to prove by a preponderance of the evidence that a CNB Irving breached a contract, failed to act, or engaged in any action upon which Fiduciary would be entitled to recover any amount for attorneys' fees.

In finding of fact number eight, the trial court found both that there was no liability, that the loans belong to the FDIC and not

to CNB, and that the damages were uncertain. The portion of the finding concerning liability, including the portion which states that the loans do not belong to CNB, are incorrect as a matter of law, as we have held earlier regarding other findings. Points of error nineteen and twenty, as far as they concern the trial court's finding number eight concerning liability are sustained.

In finding of fact number ten, the trial court found that Fiduciary failed to prove that it is entitled to recover any amount for loan servicing fees from CNB. This finding can be construed to mean either that CNB was not liable or that Fiduciary failed to show any *amount* was due to it. We are unable to tell what the finding means; however, to the extent the finding concerns liability, Fiduciary's points of error twenty-four and twenty-five must be sustained.

Finding of fact number eleven deals entirely with the issue of CNB's liability to Fiduciary. Based upon our previous discussion, Fiduciary's points of error twenty-four and twenty-five are sustained.

■ To the extent that findings eight through ten concern proof of damages, there was testimony that "approximately $10,000" is owed to Fiduciary by CNB for failure to pay loan servicing fees. The evidence concerning Fiduciary's damages is set forth below:

[COUNSEL FOR FIDUCIARY]: What is the amount of Fiduciary Mortgage's damages?

[MR. LYLES]: $46,508.

\* \* \* \* \* \*

[COUNSEL FOR CNB]: Mr. Lyles, were you able to determine, apart from this sheet, what the damages you allege you have suffered to date? When I say "you," you understand that I mean Fiduciary Mortgage.

[MR. LYLES]: I have a rough estimate.

[COUNSEL FOR CNB]: What is your rough estimate?

[MR. LYLES]: Accrued fee to date approximately $10,000.

[COUNSEL FOR CNB]: How do you come up with that calculation? Were they estimates?

[MR. LYLES]: Based strictly on looking at the payments that were not made to me since the last payment date, through May the 24th.

[COUNSEL FOR CNB]: Have you reviewed these documents from which you have prepared Exhibit No. 1 to independently determine, at least for estimate purposes, what is due today?

[MR. LYLES]: Yes.

[COUNSEL FOR CNB]: Do you think it's more or less than eight thousand?

[MR. LYLES]: I think it is here under ten.

Although Fiduciary is not entitled to recover contingent damages which cannot be proved with reasonable certainty, *see Spiritas v. Robinowitz,* 544 S.W.2d 710, 720 (Tex.Civ.App.—Dallas 1976, writ ref'd n.r. e.), the evidence shows that approximately $10,000 in loan servicing fees was currently due to Fiduciary at the time of the hearing.

In defense, CNB witnesses asserted that CNB was not liable for the current amount due at the time of trial, and that future payments were contingent on collections of accounts. CNB further challenged the accuracy of the $10,000 figure, but not that some amount had accrued. Although the damages suffered by Fiduciary were not proved with exactness, the overwhelming preponderance of the evidence established that some amount was due to Fiduciary. Points of error twenty and twenty-five are sustained so far as they concern findings eight through ten.

In points of error nineteen and twenty-four, Fiduciary asserts there is "no evidence" to support findings eight through eleven as to damages. Under these points, Fiduciary argues that its proof of damages "was clear and uncontroverted." We disagree. More importantly, this is not the proper standard of review under these points of error. More properly, Fiduciary must establish that it proved its damages as a matter of law. Fiduciary has not met this burden. Points of error nineteen and twenty-four to this extent are overruled.

*The trial court's finding and conclusion on attorneys' fees*

In finding number eleven, the trial court stated that because CNB was not liable, Fiduciary was not entitled to attorney's fees. The finding that CNB is not liable is contrary to facts admitted as a matter of law and cannot stand. *See Miller,* 551 S.W.2d at 102. Finding eleven is substantially the same as conclusion number nine, which is as follows:

9. Fiduciary is not entitled to recovery of any amount as attorneys' fees from CNB Irving pursuant to TEX.CIV.PRACTICE & REMEDIES CODE ANN. § 38.001.

This conclusion of law has been challenged in point of error twenty-eight as not being supported by any finding of fact.

The Texas Civil Practices and Remedies Code provides for an award of attorney's fees in a breach of contract action. *See* TEX.CIV.PRAC. & REM.CODE ANN. § 38.001 (Vernon 1986). Facts admitted by CNB as a matter of law show that CNB is liable to Fiduciary for breach of contract. Therefore, the trial court's conclusion that Fiduciary is not entitled to attorney's fees is based upon facts incorrectly found and cannot stand. *See City of Houston v. Bullard,* 354 S.W.2d 224, 228 (Tex.Civ.App.—Houston [1st Dist.] 1962, no writ). Fiduciary's twenty-fourth and twenty-eighth points of error insofar as they concern finding eleven and conclusion nine on attorney's fees are sustained.

Fiduciary, in its twenty-ninth point of error, complains that conclusion nine is against the great weight and preponderance of the evidence. Because we have already held that conclusion of law number nine cannot stand, we need not address this point of error.

*Miscellaneous*

In its thirty-second point of error, Fiduciary contends that the trial court erred in failing to tax all costs against CNB. Because we are remanding this case for trial on the issue of damages, we do not address this point. *See* TEX.R.CIV.P. 131.

In its thirtieth and thirty-first points of error, Fiduciary contends that there was no evidence to support the take-nothing judgment and that the judgment was against the great weight and preponderance of the evidence. These points of error do not present a justiciable question, as the essential complaint on appeal must be with specific findings and not with the judgment. *See Liberty Mutual Fire Ins. Co. v. McDonough*, 734 S.W.2d 66, 70 (Tex. App.—El Paso 1987, no writ).

*The trial court's conclusions of law*

In points of error two, three, four, ten, eleven, twelve, thirteen, fourteen, twenty-four, twenty-five, and twenty-six, Fiduciary contends that there is no finding of fact to support conclusions of law one and three through five, no evidence to support the conclusions, and that they are against the great weight or preponderance of the evidence. The conclusions concern CNB's liability. These conclusions are as follows:

1. Fiduciary is not entitled to any recovery pursuant to Plaintiff's Original Petition, and CNB Irving is entitled to a take nothing judgment in its favor.
3. The FDIC loans upon which Fiduciary seeks to recover servicing fees are not assets of CNB Irving, and do not, therefore, give rise to any liability on the part of CNB Irving for payment to Fiduciary of loan servicing fees.
4. There is no agreement between Fiduciary and CNB Irving in connection with the Cheung's Rice Bowl loan.
5. There is no agreement between Fiduciary and CNB Irving under which Fiduciary is entitled to receive purchase participation for the Hurst Video, Lhota Enterprises, Infirmacare, Video Works, Wood, Etc., Soccer Center, Texas Law Man, and Trifovesti loans from CNB Irving.

In points of error four, eleven, fourteen, and twenty-six, Fiduciary's argument is that these conclusions of law are erroneous because they are based upon facts which are contrary to those judicially admitted. We agree that conclusions of law one and three through five concerning CNB's liability are based on findings of fact which are contrary to facts established as a matter of law and cannot stand. *See City of Houston v. Bullard*, 354 S.W.2d at 228. These incorrect conclusions of law are not binding upon this court. *See Bantuelle v. Williams*, 667 S.W.2d 810, 818 (Tex.App.—Dallas 1983, writ ref'd n.r.e.). Points of error four, eleven, fourteen, and twenty-six are sustained. In light of our sustaining these points of error, we need not address points of error two, three, ten, eleven, twelve, thirteen, fourteen, twenty-four, and twenty-five, as far as they concern these conclusions of law.

In points of error twenty-one, twenty-two, twenty-three, twenty-seven, and twenty-eight, Fiduciary contends that conclusions of law two and six through nine are not supported by findings of fact. These conclusions of law, concerning damages, are as follows:

2. Fiduciary failed to meet its burden to prove by a preponderance of the evidence that it is entitled to recover damages from CNB Irving and failed to prove damages with reasonable certainty, without speculation and conjecture.
6. The evidence presented at trial by Fiduciary in support of its claim for recovery of damages was speculative and conjectural. The evidence presented was not sufficient to afford a reasonable basis for recovery of damages or to prove damages with reasonable certainty.
7. Fiduciary failed to prove by a preponderance of the evidence that it is entitled to recovery of any amount for loan servicing fees from CNB Irving.
8. Fiduciary is not entitled to recover from CNB Irving any amount as damages in this cause.
9. Fiduciary is not entitled to recovery of any amount as attorneys' fees from CNB Irving pursuant to TEX.CIV.PRACTICES & REMEDIES CODE ANN. § 38.001.

Because we have already sustained point of error twenty-eight as it concerns conclusion nine, we will not re-address it. Further, in view of our holding that the trial

court's findings must be set aside, these conclusions of law are not supported by any findings of the trial court and cannot stand. *See City of Houston v. Bullard,* 354 S.W.2d at 228. Points of error twenty-one, twenty-two, twenty-three, twenty-seven, and twenty-eight are sustained insofar as they concern conclusions of law two and six through nine.

### The trial court's sanctions

 CNB, in three cross-points of error, contends that the trial court erred in sanctioning it by striking its pleadings. The imposition of sanctions for failure or refusal of a party to comply with discovery rules is directed to the sound discretion of the trial court, and such imposition can be set aside only upon a showing of clear abuse of discretion. *Bass v. Duffey,* 620 S.W.2d 847, 849 (Tex.Civ.App.—Houston [14th Dist.] 1981, no writ). A trial court abuses its discretion when its acts are arbitrary or unreasonable. *See Downer v. Aquamarine Operators, Inc.,* 701 S.W.2d 238, 242 (Tex.1985).

The primary purpose of discovery sanctions is not punishment, but to secure compliance with the discovery rules and to prevent a party from arbitrarily and wantonly absenting himself from giving evidence in aid of litigation. *Rodebaugh v. Beachum,* 576 S.W.2d 143, 146 (Tex.Civ.App.—Waco 1978, writ ref'd n.r.e.); *Plodzik v. Owens–Corning Fiberglas Corp.,* 549 S.W.2d 52, 54 (Tex.Civ.App.—Austin 1977, no writ). However, while encouraging compliance may be the primary purpose of discovery sanctions, it is not their only purpose: they also have the laudable function of deterring litigants from future abuses of the discovery process. *Nat'l Hockey League v. Metropolitan Hockey Club, Inc.,* 427 U.S. 639, 643, 96 S.Ct. 2778, 2780–81, 49 L.Ed.2d 747, 751 (1976).

 The application of the sanction of depriving a party of the right to present his grounds for relief or his defense, thereby subjecting him to the rendition of a default judgment against him, is a harsh remedy.[2] However, the court's action in applying such sanctions will stand in the absence of a showing of abuse of discretion. *Hankins v. Haffa,* 469 S.W.2d 733, 738 (Tex.Civ.App. —Amarillo 1971, writ ref'd n.r.e.).

CNB had more than twenty-five days to secure counsel to appear at the May 6 deposition. The deposition had already been rescheduled once. A review of the record does not demonstrate an abuse of discretion by the trial court. CNB's cross-points of error one, two, and three are overruled.

The cause is reversed and remanded to the trial court for trial on the issues of damages and attorney's fees.

DEVANY, J., dissents.

DEVANY, Justice, dissenting.

I respectfully disagree with the majority opinion. The majority reverses a judgment of a trial court, not based upon the merits,

---

2. As the dissent points out, it certainly is "obvious" that the trial court by its findings and conclusions must have changed its mind about its ruling in striking CNB's answer. However, there is nothing in the record even remotely indicating that the trial court, in fact, changed its mind. Further, as mentioned above, throughout the trial, the judge continued to rule consistant with the sanction. Finally, contrary to the dissent's assertion that this decision works an injustice to CNB, it is just as certain that Fiduciary must have been surprised when the trial court, after holding that Fiduciary did not have to prove CNB's liability during trial, then announced after trial in its findings and conclusions that Fiduciary lost because it did not prove liability. If the judge did change his mind about imposition of the sanction, Fiduciary should have been given the opportunity to offer evidence on the issue of liability. The dissent would affirm without affording such an opportunity.

In the final analysis, the dissent basically urges that by this opinion the result of the sanction is too harsh. However, it has been said that "[t]he expression of legal rights is often subject to certain procedural rules. The failure to follow those rules may result in a curtailment of the rights." *Ins. Corp. of Ireland v. Compagnie Des Bauxites,* 456 U.S. 694, 705, 102 S.Ct. 2099, 2105, 72 L.Ed.2d 492 (1982). Also "... discovery sanctions may cause the decision to rest partially on some basis other than the merits.... [A] litigant who avails himself of the court system to assert or defend his rights and then flaunts its rules invites sanctions." *Sanctions for Discovery Abuse under New Rule 215,* 15 St. Mary's L.J. 767, 820 (1984).

but because of a technical point that the trial court obviously corrected.

The pertinent facts necessary for this dissent are simply that City National Bank of Irving (CNB), appellee, is a new entity which purchased certain assets from the Federal Deposit Insurance Corporation (FDIC) as receiver for First National Bank of Irving, a defunct bank which was a party to the contracts underlying this lawsuit. The other party to the contracts was Fiduciary Mortgage Company, appellant. Fiduciary filed a lawsuit against CNB alleging that the "defendant" had entered into a series of contracts with Fiduciary. Nowhere in its pleadings or evidence does Fiduciary specifically state that it *contracted with CNB*. Fiduciary's entire case is predicated upon an *inference* drawn by the majority that Fiduciary had stated a cause of action against CNB, but rejected by the trial court. CNB denied the allegations and fully explained in its answer that Fiduciary had sued the wrong party.

The problem that confronts the majority began on May 26, 1987, after suit was filed, when the trial court granted the motion of Fiduciary for sanctions. That motion was the result of a breakdown in arrangements between CNB and Fiduciary wherein CNB had assembled documents evidencing the fact that it was not the party to the contracts sued upon and had supposedly given such documents to Fiduciary's attorney. For whatever reasons the trial judge *then* believed, the sanction imposed on May 26, 1987, was the striking of CNB's pleadings. While I would hold that such sanction was a harsh result under the circumstances, an abuse of discretion, and judicially offensive to me, nevertheless the trial court proceeded to trial obviously modifying its order by examining the evidence which bore upon both liability and damages. I say "obviously" because the trial court's actions clearly indicated it changed its mind about a full imposition of the sanction.

The trial court made findings of fact and conclusions of law in order to reach a just result. The court found that the contracts were with First National Bank of Irving, *not with CNB*. The trial court further traced the insolvency of *First National Bank of Irving*, the declaration of insolvency by the FDIC, and the purchase of certain assets by CNB *from the FDIC*. The trial court concluded:

The FDIC loans under which Fiduciary seeks to recover loan servicing fees are not assets of CNB Irving, and do not, therefore, give rise to any liability on the part of CNB Irving for payment to Fiduciary of those loan servicing fees.

A trial judge has complete control of the cause before him. He has extraordinary powers. He may issue one order, not follow it, and proceed in a manner which completely or partially vacates that order. The sum total of his actions may then be reviewed by an appellate court to determine if there has been an abuse of discretion. *Galbraith v. Galbraith*, 619 S.W.2d 238, 241 (Tex.Civ.App.—Texarkana 1981, no writ). A trial court has continuing control of an interlocutory order with power to set it aside. *Kone v. Security Finance Co.*, 158 Tex. 445, 313 S.W.2d 281, 286 (1958). The sanction ordered by the trial court in the instant case does not remain offensive when the court acts in a manner that modifies its own order in an effort to achieve justice.

Further, if liability is admitted in a default judgment case since no answer is filed, the proof of damages may yet depend on a review of the underlying contract in order to measure damages. How else can a plaintiff prove how much is owed in servicing fees, in a case such as this one, without looking at the contract which offers the measure of damages? The contract then becomes evidence which may belie liability.

In my examination of the record, I note that Fiduciary (the plaintiff at trial) introduced evidence consisting only of its own summary of loans, omitting any indication of the name of the obligor for the servicing fees. Indeed, the record reveals that there were no contracts with CNB. This sole evidence by Fiduciary is misleading. It could be a list of loans totally unrelated to the case being tried. Indeed, it is a list of loans with First National Bank of Irving *rather than with CNB*. It is apparent that the trial court found Fiduciary's evidence incomplete. In any event, the evidence is insufficient because it appears to be a sum-

mary prepared by Fiduciary and does not indicate that the summary is with respect to any loans made by any particular bank. The summary fails to establish the damages suffered by Fiduciary from loans made by CNB. On the other hand, the defendant (CNB) introduced in evidence the very contracts underlying *Fiduciary's own summary.* This evidence clearly shows that the contracts were with First National Bank of Irving, a defunct entity.

In a default judgment case, which is similar to one where a defendant's answer has been struck, great care must be exercised by a trial court. The "objective of [the Texas] rules of civil procedure is to obtain a just, fair, equitable and impartial adjudication of the rights of litigants." The "rules shall be given a liberal construction." TEX.R.CIV.P. 1. The rules were not written to achieve unjust results apparent on the face of the record. The trial judge in this instance made every effort to expedite the trial, but at the same time exercised proper discretion to achieve a fair result. It is obvious that CNB is not liable for any damages based on the contracts sued upon.

I strongly dissent and would affirm the judgment of the trial court.